### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| KIMBERLY HORTON, DAVID BEAR MCLAUGHLIN, MARY CHRISTINE RAPOZA, DAVID NETO, CORENE L. QUIRK, MARY B. JOHNSTON, JOYCE M. WICHMANN AND RICHARD E. H. HOWELLS, on Behalf of Themselves and All Those Similarly Situated, | |
| Plaintiffs, | Civil Action No. 2:14-cv-04433-MDL |
| vs. | **CLASS ACTION COMPLAINT** |
| TAKATA CORPORATION, TK HOLDINGS, INC., HIGHLAND INDUSTRIES, INC., HONDA MOTOR CO., LTD., AMERICAN HONDA MOTOR CO., INC., FORD MOTOR COMPANY, SUBARU OF AMERICA, INC., NISSAN NORTH AMERICA, INC., TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., AND CHRSYLER GROUP, LLC, | **<u>JURY TRIAL DEMANDED</u>** |
| Defendants. | |

<u>INTRODUCTION</u>

1.      An automotive component supplier that manufactures and sells airbags in automobiles and vehicle manufacturers must take all necessary steps to ensure that its products—which can literally mean the difference between life and death in an accident—function as designed, specified, promised, and intended. Profits take a back seat to safety for the airbag manufacturer and the automobile manufacturer in making its product sourcing decisions. Yet Takata and the Vehicle Manufacturer Defendants put profits ahead of safety. Takata cut corners to build cheaper airbags, and the Vehicle Manufacturer Defendants bought their airbags from Takata to save money. The result is that instead of saving lives, faulty Takata airbags in the Vehicle Manufacturer automobiles are killing and maiming drivers and passengers involved in otherwise minor and survivable

accidents. Even more alarming, rather than take the issue head-on and immediately do everything in their power to prevent further injury and loss of life, Takata and the Vehicle Manufacturer Defendants have engaged in a ten-year pattern of deception and obfuscation, only very recently beginning a partial recall of affected vehicles.

2.      Airbags are a critical component in the safety features of virtually every motor vehicle sold in the United States and throughout the world. Currently, over 30,000 people are killed in motor vehicle accidents each year in the United States.  Remarkably, that number is nearly half of what it was in 1966, when over 50,000 Americans died in car crashes.  The drastic reduction is, in large, part due to tremendous advances in vehicle occupant safety, including the widespread use of seatbelts and airbags.

3.      In order to prevent serious injury and death resulting from bodily impact with the hard interior surfaces of automobiles, like windshields, steering columns, dashboards, and pillars, upon a vehicle experiencing a specified change in velocity in a collision, accelerometers and sensors in the vehicle frame trigger the vehicle airbags to deploy. Because collisions can occur at rates of speed that can cause serious injury, to be effective, airbags must deploy timely and at appropriate velocity to be effective, but not subject the occupant to additional unnecessary harm. To accomplish this, the airbag system is through highly conductive metals, such as gold, and the airbag systems use small explosive charges to immediately inflate the airbags upon being triggered. This case flows directly from the now admitted fact that Takata's explosive charge components in its airbag systems were defectively manufactured since as early as 2001, and perhaps earlier.

4.      Rather than deploying the airbags to prevent injuries, the defective Takata airbag inflators quite literally blew up like hand-grenades, deploying at excessive forces and in many incidents, sending lethal metal and plastic shrapnel into the vehicle cockpit and into the bodies of the drivers and passengers. In fact, in one otherwise non-catastrophic collision, responding police opened a homicide investigation because it appeared that the deceased driver had been stabled

multiple times in the head and neck immediately before crashing her car. In truth and fact, the defective Takata airbag in the Honda vehicle had exploded and killed the driver by sending metal and plastic fragments into her body.

5.     Takata and the Vehicle Manufacturer Defendants knew of the deadly airbag defect at least 13 years ago, but did nothing to prevent ongoing injury and loss of life. Takata's first airbag defect recall stemmed from defective manufacturing in 2000, but was limited (by Takata) to a recall of select Isuzu vehicles. In Alabama, in 2004, a Takata airbag in a Honda Accord exploded, shooting out metal fragments which gravely injured the driver.  Honda and Takata unilaterally deemed it "an anomaly" and did not issue a recall, adequately investigate themselves, or seek the involvement of federal safety regulators.  Instead, they brushed it under the rug: Takata kept making defective airbags; and Honda kept putting them in its vehicles while marketing them as highly safe and of high quality.

## NATURE OF CLAIM

6.     Plaintiffs David Bear McLaughlin, Kimberly Horton, Mary Christine Rapoza, David Neto, Corene L. Quirk, Joyce M. Wichmann and Richard E. H. Howells bring this action on behalf of themselves and on behalf of all persons similarly situated who purchased or leased Defective Vehicles (defined below) manufactured, distributed, or sold by the Vehicle Manufacturer Defendants (defined below) that contain airbags manufactured by Takata Defendants (defined below), for claims under of federal and state law. Plaintiffs, based on personal knowledge as to Plaintiffs and their own acts, and upon information and belief as to all other matters, allege as follows:

7.     As used in this Complaint, "Defective Vehicles" refers to all vehicles purchased or leased in the United States that have airbags manufactured by Takata D e f e n d a n t s and have been subject to an airbag-related warning or recall, including, but not limited to, the following vehicles:

| | | |
|---|---|---|
| 2001-2007 Honda Accord | 2001-2005 Honda Civic | 2002-2006 Honda CR-V |

| | | |
|---|---|---|
| 2003-2011 Honda Element | 2002-2004 Honda Odyssey | 2003-2007 Honda Pilot |
| 2006 Honda Ridgeline | 2003-2006 Acura MDX | 2002-2003 Acura TL/CL |
| 2005 Acura RL | 2000-2005 BMW 3 Series Sedan | 2000-2006 BMW 3 Series Coupe |
| 2000-2005 BMW 3 Series Sports Wagon | 2000-2006 BMW 3 Series Convertible | 2001-2006 BMW M3 Coupe |
| 2001-2006 BMW M3 Convertible | 2004 Ford Ranger | 2005-2006 Ford GT |
| 2005-2007 Ford Mustang | 2002-2004 Lexus SC | 2002-2005 Toyota Corolla |
| 2003-2005 Toyota Corolla Matrix | 2002-2005 Toyota Sequoia | 2003-2005 Toyota Tundra |
| 2003-2008 Dodge Ram 1500 | 2005-2008 Dodge Ram2500 | 2006-2008 Dodge Ram 3500 |
| 2006-2008 Dodge Ram 4500 | 2008 Dodge Ram5500 | 2005-2008 Dodge Durango |
| 2005-2008 Dodge Dakota | 2005-2008 Chrysler 300 | 2007-2008 Chrysler Aspen |
| 2003-2005 Pontiac Vibe | 2005 Saab 9-2x | 2003-2007 Mazda6 |
| 2006-2007 MazdaSpeed6 | 2004-2008 Mazda RX-8 | 2004-2005 Mazda MPV |
| 2004 Mazda B-Series Truck | 2004-2005 Mitsubishi Lancer | 2006-2007 Mitsubishi Raider |
| 2001-2003 Nissan Maxima | 2001-2004 Nissan Pathfinder | 2002-2004 Nissan Sentra |
| 2001-2004 Infiniti I30/I35 | 2002-2003 Infiniti QX4 | 2003-2005 Infiniti FX35/FX45 |
| 2003-2005 Subaru Baja | 2003-2005 Subaru Outback | 2003-2005 Subaru Legacy |
| 2004-2005 Subaru Impreza. | | |

The term "Defective Vehicles" includes all vehicles purchased or leased in the United States that have airbags manufactured by Takata Defendants and are recalled at any point after the filing date of this Complaint for a reason relating to airbag defects. Plaintiffs reserve the right to supplement or refine this definition as discovery progresses.

8.    Airbags are meant to inflate timely, during an automobile collision but with only such force necessary to cushion the occupant from impact to the vehicle's interior and not cause additional enhanced injury. When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those motor vehicles to make those vehicles safe. The Defective Vehicles contain airbags manufactured by Defendant Takata that, instead of protecting vehicle occupants from bodily injury during accidents, violently explode using excessive force, and in many incidents, expel lethal amounts of metal debris and shrapnel at vehicle occupants.

9.      The Defective Vehicles contain airbags manufactured by Takata Defendants that, instead of protecting vehicle occupants from bodily injury during accidents, violently explode using excessive force, and in many incidents, expel lethal amounts of metal debris and shrapnel at vehicle occupants.

10.      The manufacturing defect in Takata's airbags dates back to at least April 2000, when, according to one recall notice, some Takata airbags produced between April 2000 and September 2002 contained manufacturing defects.  Takata became aware of the defect at least as early as 2001 when the first recall was issued relating to the exploding Takata airbags in Isuzu vehicles.

11.      In 2004, a Takata airbag in a Honda Accord exploded in Alabama, shooting out metal shrapnel and severely injuring the car's driver.  Honda and Takata deemed the incident "an anomaly" and did nothing about it.  Honda did not issue a recall.  Neither Honda nor Takata sought the involvement of federal safety regulators.  In fact, Honda did not tell regulators about this event until an inquiry into its 2009 recall, the first with respect to the Takata airbags.  After additional Takata-manufactured airbags ruptured, Honda issued additional recalls in 2010, 2011, 2013 and 2014.

12.      Only in 2008 did U.S. safety regulators  begin to slowly become apprised of the serious dangers posed by the legal Takata airbags, and even then federal officials lacked a complete and accurate understanding of the risks due to the Defendants obfuscation and destruction of relevant documents.  Indeed, Honda received three additional reports of airbag rupture incidents  in  2007, but never issued recalls or told U.S. safety regulators that the incidents involved exploding airbags.  Finally, in November 2008, Honda informed U.S. authorities that it had a problem with some of the Takata airbags installed in its vehicles.  However, at that time Honda recalled only 4000 Accords and Civics.

13.      In April 2009, six months after the limited 2008 recall, a Takata airbag in Florida

resident's Honda Civic exploded after a minor accident. The lethal explosion sent a two-inch piece of shrapnel from the airbag flying into the driver's neck. Although the driver survived, when highway troopers found her, blood was gushing from a gash in her neck. The driver's car was not part of the 2008 Recall.

14.     In May 2009, a month after the above accident, an 18-year-old driver was killed while driving a 2001 Honda Accord when the Takata airbag in her car exploded after her car bumped into another car in a parking lot. While she apparently survived her accident, the metal shrapnel that shot out of the exploding Takata airbag sliced open her carotid artery and she bled to death. Her car was not one of those recalled six months earlier by Honda.

15.     It wasn't until two months after this death that Honda expanded its 2008 recall to about 400,000 vehicles, summoning back additional 2001 and 2002 Acura, Civic, and Accord models.

16.     In recent incidents, first responders have been baffled by the fact that victims of apparently minor accidents suffered injuries more consistent with being shot or stabbed repeatedly, or unexplained cervical fractures.

17.     For example, around July 2014, a South Florida resident was involved in a crash while driving her 2001 Honda Civic. While she survived the automobile accident, she was badly injured when a chunk of metal exploded from her car's Takata airbag into her forehead. She survived, but now suffers from headaches, nausea, and loss of vision.

18.     On September 29, 2014, a Florida resident died four days after her 2001 Honda Accord struck another car in Orlando and the Takata airbag exploded, sending shrapnel into her neck. The medical examiner stated that the shrapnel tore through the airbag, hitting the driver and causing "stab-type wounds" and cutting her trachea. Indeed, her death was initially investigated as a homicide by detectives. A week after she died, a letter arrived at her house in the mail from Honda urging her to get her car fixed because of faulty airbags that could explode.

19.     Despite this shocking record, both Takata and the Vehicle Manufacturer Defendants have been slow to report the full extent of the danger to drivers and passengers and failed to issue appropriate recalls.  Both the Vehicle Manufacturer Defendants and Takata provided contradictory and inconsistent explanations to regulators for the defects in Takata's airbags, leading to more confusion and delay.  Indeed, the danger of exploding airbags and the number of vehicles affected was not disclosed for years after it became apparent there was a potentially lethal problem.  Instead, Takata and the Vehicle Manufacturer Defendants repeatedly failed to fully investigate the problem and issue proper recalls, allowing the problem to proliferate and cause numerous injuries and at least four deaths over the last 13 years.

20.     It was not until 2013, four years after Honda first reported the problem to U.S. regulators, that a more detailed recounting of Takata's safety failures was revealed.  The full scope of the defects has yet to be determined.  More information about Takata's defective airbags continues to be uncovered today.

21.     Takata's own airbag manufacturing plants did not abide by Takata's internal safety rules.  In 2002, Takata's airbag manufacturing plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

22.     Equally troubling, Takata misled at least one other car manufacturer to believe that its vehicles were not affected by Takata's defective airbags.  In 2010, Takata affirmatively assured BMW that its vehicles were not affected because BMW's airbags were manufactured on a different production schedule from Honda's.  It wasn't until 2013 that Takata finally admitted that BMW's airbags were in fact at risk of explosion.  Thus Takata's actions aided in the delay of other car manufacturers issuing recalls on their vehicles containing Takata airbags.

23.     However, the other Vehicle Manufacturer Defendants were on notice as early as 2008 when Honda first notified regulators of a problem with its Takata airbags.    Other car

manufacturers with Takata airbags in their vehicles knew or should have known at that time that there might be a safety problem with their airbags and should have launched their own investigations and notified customers.

24.    In June 2014, NHTSA announced that BMW, Chrysler, Ford, Honda, Mazda, Nissan, and Toyota were conducting limited regional recalls to address a possible safety defect involving Takata brand airbag inflators.  The action was influenced by a NHTSA investigation into six reports of airbag inflator ruptures, all of which occurred in Florida and Puerto Rico.

25.    Notably, three of the four Takata related airbag deaths, occurred outside of the "regional recall" areas, including Oklahoma, Virginia, and California.[1]

26.    To date, over 14 million vehicles with Takata's airbags have been recalled worldwide, and there are reports that additional vehicles that have not yet been disclosed by the Defendants could join the list of recalls.  The large majority of those recalls have come only within the last year despite the fact that many of the vehicles were manufactured with a potentially defective and dangerous airbag over a decade ago.  According to NHTSA, as of October 22, 2014, over five (5) million Honda and Acura vehicles are potentially affected by Takata-manufactured airbags; 2.7 million BMW, Chrysler, Ford, GM, Mazda, Mitsubishi, Nissan, Subaru and Toyota vehicles are affected.[2]

27.    A recent article in *The New York Times* detailed the widespread (and worldwide) nature and severity of the defective airbags manufactured by Takata, including the Defective Models by the Honda Defendants:

> Today, more than 14 million vehicles have been recalled by 11 automakers over rupture risks involving air bags manufactured by the supplier, Takata. That is about five times the number of vehicles recalled this year by General Motors for its deadly ignition switch defect.

---

[1]    *See*    http://www.nbcnews.com/business/autos/critics-take-aim-geographic-recalls-amid-air-bag-defects-n238426 (Nov. 2, 2014).
[2]    *See*    http://www.nhtsa.gov/About+NHTSA/Press+Releases/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Nov. 13, 2014).

Two deaths and more than 30 injuries have been linked to ruptures in Honda vehicles, and complaints received by regulators about various automakers blame Takata air bags for at least 139 injuries, including 37 people who reported air bags that ruptured or spewed shrapnel or chemicals.[3]

28.    U.S. federal prosecutors have taken notice of Takata's failure to properly report the problem with its airbags and are trying to determine whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers.

29.    As a result of Takata's and the Vehicle Manufacturer Defendants' misconduct, Plaintiffs and Class Members (defined below) were harmed and suffered actual damages in that the Defective Vehicles have potentially deadly airbags that pose an ongoing threat to drivers and passengers and have drastically diminished the value of the cars in which they are installed. Plaintiffs and the Classes did not receive the benefit of their bargain as purchasers and lessees received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations.  Class Members did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided.  A vehicle purchased or leased under the reasonable assumption that it is "safe" as advertised is worth more than a car—such as the Defective Vehicles—that is known to contain a Takata airbag.  All purchasers of the Defective Vehicles overpaid for their vehicles. Furthermore, the public disclosure of the defective Takata airbags has caused the value of the Defective Vehicles to materially diminish.  Purchasers or lessees of the Defective Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the defects been disclosed.

30.    Worse still, the current recalls have done little to protect owners and lessees of Defective Vehicles from the urgent and ongoing threat posed by Takata airbags because there are not

---

[3] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

*enough new airbags to replace the millions of recalled airbags.*

31.    All owners or lessees of the Defective Vehicles have been strongly urged by the National Highway Traffic Safety Administration ("NHTSA") "to act immediately" on the recall notices to replace Takata airbags.  NHTSA reiterated that its recall message comes with "urgency" and that "[r]esponding to these recalls, whether old or new, is essential to personal safety."

32.    However, Takata is unable to manufacture enough new, safe airbags quickly enough to replace the faulty airbags in the nearly eight million vehicles that are the subject of the most recent recall.  "There's simply not enough parts to repair every recalled single car immediately," said Chris Martin, a spokesman for Honda.[4]

33.    Even if there were enough airbags, dealers are unable to keep up with the volume of customers rushing to get their Takata airbags replaced.  Some dealers have reported receiving up to 900 calls per day about the recalls and are telling customers that they may have to wait months before airbags can be replaced.

34.    Instead of replacing the airbags, some dealers are either disabling airbags and leaving customers with vehicles that are unsafe to drive, or are advising customers to not drive vehicles with Takata airbags until the airbags can be replaced.

35.    Toyota has taken the extreme step of disabling passenger airbags entirely and putting a "Do Not Sit Here" decal in the vehicle until proper repairs can be made.  In the alternative, Toyota is advising customers to not drive their vehicles with Takata airbags until the airbags can be replaced.  Toyota has not explained how drivers who rely on these vehicles for work and school are to cope without means for transportation.

36.    Plaintiffs and Class Members are either left with unsafe vehicles or no vehicle at all.  At this time, automakers are not offering customers the use of loaner vehicles.

37.    Congress is also concerned with this serious problem and has questioned the

---

[4] Hiroko Tabuchi and Christopher Jensen, "It Looked Like a Stabbing, but Takata Airbag Was the Killer," *New York Times*, Oct. 20, 2014.

legality of Toyota's and other automaker's responses.   U.S. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), expressed their alarm concerning "a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the front seat if replacement parts for these airbags are unavailable.   **As a matter of policy, this step is extraordinarily troubling and potentially dangerous.**   As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (40 U.S.C.) prohibits a manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption.  We are unaware of an exemption from your office in the case of Takata airbags."[5]

38.     The Senators stated that "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."[6] **"[Y]our office should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts**."[7]

39.     As these Senators have recognized, there is an immediate need to provide safe vehicles for Plaintiffs and Class Members.   Otherwise, many may be left without a vehicle to take them to and from work, to be able to pick up their children from school or childcare, or, in the most urgent situations, a vehicle to transport themselves or someone else to a hospital.

40.     Takata and the Vehicle Manufacturer Defendants knew or should have known that the Takata airbags installed in millions of vehicles were defective.  Both Takata and the Vehicle Manufacturer Defendants, who concealed their knowledge of the nature and extent of the defects from the public, have shown a blatant disregard for public welfare and safety.

---

[5] *Id.*
[6] *Id.*
[7] *Id.* (emphasis added)

## JURISDICTION AND VENUE

41.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the putative Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

42.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.  This Court has personal jurisdiction over Defendants, because they conduct substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiffs' claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to property in this state arising out of Defendants' acts and omissions outside this state and at or about the time of such injuries Defendants were engaged in solicitation or service activities within this state or products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

43.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants have caused harm to class members residing in this District, and the Defendants are residents of this District under 28 U.S.C. 1391(c)(2), because they are subject to personal jurisdiction in this district.

## THE PARTIES

**South Carolina and Nationwide Class Representatives**

44.     Plaintiff and putative South Carolina Class Representative Kimberly Horton is a resident of Berkley County, South Carolina.  Plaintiff owns a 2005 Ford Mustang GT, which is on the list of vehicles subject to NHTSA's recall for vehicles with defective Takata airbags.  Plaintiff was damaged and suffered losses as a result of Defendants' conduct. Plaintiff has not received a

vehicle recall letter from Ford as of the date of this Complaint; however, Takata recently disclosed that it has failed to keep adequate quality-control records, making it difficult to identify vehicles with potentially defective airbags.[8] Additionally, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database."[9] Had Plaintiff known of the airbag defect, she would not have purchased the 2005 Ford Mustang GT, or she would not have paid as much for it as she did. Plaintiff did not learn of the airbag defects in her car until 2014.

45.      Plaintiff and putative South Carolina Class Representative David Bear McLaughlin is a citizen and resident of Berkeley County, South Carolina.   Plaintiff owns a 2005 Dodge Ram 1500, which is on the list of vehicles subject to NHTSA's recall for vehicles with defective Takata airbags.  Plaintiff was damaged and suffered losses as a result of Defendants' conduct.  Plaintiff has not received a vehicle recall letter from Chrysler as of the date of this Complaint; however and as referenced above, Takata recently disclosed that it has failed to keep adequate quality-control records, making it difficult to identify vehicles with potentially defective air bags.  Additionally and as referenced above, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database."   Had Plaintiff known of the airbag defect, he would not have purchased the 2005 Dodge Ram 1500, or he would not have paid as much for it as he did.  Plaintiff did not learn of the airbag defects in his car until 2014.

46.      Plaintiff and putative South Carolina Class Representative Mary Christine Rapoza, is a citizen and resident of Colleton County, South Carolina.   Plaintiff owns a 2004 Honda Element, which is on the list of vehicles subject to NHTSA's recall for vehicles with defective Takata airbags.  Plaintiff was damaged and suffered losses as a result of Defendants' conduct. Plaintiff has

---

[8] See Hiroko Tabuchi and Christopher Jensen, *Now the Air Bags Are Faulty, Too*, N.Y. Times (June 23, 2014); Colum Murphy and Eric Pfanner, *Takata Faces Rocky Road After Recalls*, The Wall Street Journal (Oct. 1, 2014).

[9]      *See*    http://www.nhtsa.gov/About+NHTSA/Press+Releases/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Nov. 12, 2014).

not received a vehicle recall letter from Honda as of the date of this Complaint; however and as referenced above, Takata recently disclosed that it has failed to keep adequate quality-control records, making it difficult to identify vehicles with potentially defective air bags. Additionally and as referenced above, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database." Had Plaintiff known of the airbag defect, she would not have purchased the 2004 Honda Element, or she would not have paid as much for it as she did.  Plaintiff did not learn of the airbag defects in her car until 2014.

47.    Plaintiff and putative Nationwide Class Representative David Neto is a citizen and resident of Miami-Dade County, Florida.  Plaintiff owns a 2005 Dodge Ram 1500, which is on the list of vehicles subject to NHTSA's recall for vehicles with defective Takata airbags. Plaintiff was damaged and suffered losses as a result of Defendants' conduct.  Plaintiff has not received a vehicle recall letter from Chrysler as of the date of this Complaint; however, Takata recently disclosed that it has failed to keep adequate quality-control records, making it difficult to identify vehicles with potentially defective airbags.  Additionally, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database."  Had Plaintiff known of the airbag defect, he would not have purchased the 2005 Dodge Ram 1500, or he would not have paid as much for it as he did.  Plaintiff did not learn of the airbag defects in his car until 2014.

48.    Plaintiff and putative South Carolina Class Representative Corene L. Quirk is a citizen and resident of Dorchester County, South Carolina.  Plaintiff owns a 2004 Toyota Sequoia, which is on the list of vehicles subject to NHTSA's recall for vehicles with defective Takata airbags.  Plaintiff was damaged and suffered losses as a result of Defendants' conduct. Plaintiff has not received a vehicle recall letter from Toyota as of the date of this Complaint; however and as referenced above, Takata recently disclosed that it has failed to keep adequate quality-control

records, making it difficult to identify vehicles with potentially defective air bags. Additionally and as referenced above, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database." Had Plaintiff known of the airbag defect, she would not have purchased the 2004 Toyota Sequoia, or she would not have paid as much for these cars as she did. Plaintiff did not learn of the airbag defects in her car until 2014.

49.     Plaintiff and putative South Carolina Class Representative Mary B. Johnston, and at all times relevant to this Complaint, did reside in Charleston County, South Carolina. Plaintiff owns a 2004 Pontiac Vibe, which is on the list of vehicles subject to NHTSA's recall for vehicles with defective Takata airbags. Plaintiff was damaged and suffered losses as a result of Defendants' conduct. Plaintiff has not received a vehicle recall letter from Pontiac as of the date of this Complaint; however and as referenced above, Takata recently disclosed that it has failed to keep adequate quality-control records, making it difficult to identify vehicles with potentially defective air bags. Additionally and as referenced above, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database." Had Plaintiff known of the airbag defect, she would not have purchased the 2004 Pontiac Vibe, or she would not have paid as much for it as she did. Plaintiff did not learn of the airbag defects in her car until 2014.

50.     Plaintiff and putative South Carolina Class Representative Joyce M. Wichmann is a citizen and resident of Charleston County, South Carolina.   Plaintiff owns a 2003 Subaru Outback, which is on the list of vehicles subject to NHTSA's recall for vehicles with defective Takata airbags. Plaintiff was damaged and suffered losses as a result of Defendants' conduct. Plaintiff has not received a vehicle recall letter from Subarau as of the date of this Complaint; however and as referenced above, Takata recently disclosed that it has failed to keep adequate quality-control records, making it difficult to identify vehicles with potentially defective air bags. Additionally and

as referenced above, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database." Had Plaintiff known of the airbag defect, she would not have purchased the 2003 Subaru Outback, or she would not have paid as much for it as she did.  Plaintiff did not learn of the airbag defects in her car until 2014.

51.    Plaintiff and putative South Carolina Class Representative Richard E. H. Howells is a citizen and resident of Charleston County, South Carolina.   Plaintiff owns a 2005 Infiniti FX35, which is on the list of vehicles subject to NHTSA's recall for vehicles with defective Takata airbags.  Plaintiff was damaged and suffered losses as a result of Defendants' conduct. Plaintiff has not received a vehicle recall letter from Nissan as of the date of this Complaint; however and as referenced above, Takata recently disclosed that it has failed to keep adequate quality-control records, making it difficult to identify vehicles with potentially defective air bags. Additionally and as referenced above, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database."  Had Plaintiff known of the airbag defect, he would not have purchased the 2005 Infiniti FX35, or he would not have paid as much for it as he did.  Plaintiff did not learn of the airbag defects in his car until 2014.

**Defendants**

52.    Defendant Takata Corporation ("Takata") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Takata is a specialized supplier of automotive safety systems that designs, manufactures, tests, markets, distributes, and sells airbags.   Takata is a vertically-integrated company and manufactures component parts in its own facilities.

53.    Defendant TK Holdings Inc. ("TK Holdings") is a subsidiary of Takata Corporation headquartered in Auburn Hills, Michigan.  TK Holdings sells, designs, manufactures, tests, marks, and distributes airbags in the United States.  TK Holdings both directly and  through  subsidiaries,

owns and operates 56 manufacturing plants in twenty countries.  TK Holdings manufactures airbags in the United States, including airbags at issue in this litigation.

54.    Highland Industries, Inc. ("Highland") is a subsidiary of Takata Corporation and is headquartered in Greensboro, North Carolina.  Highland manufactures industrial and automotive textile product solutions including airbag fabrics for the automotive airbag industry.  Highland manufactures airbags in the United States, including airbags at issue in this litigation.

55.    Defendants Takata, TK Holdings, and Highland are collectively referred to as "Takata" or "Takata Defendants."  Takata is the manufacturer of all the faulty airbags recalled by NHTSA that are the subject of this Complaint.

56.    Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Honda Motor manufactures and sells motorcycles, automobiles, and power products through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.

57.    Defendant American Honda Motor Co., Inc. ("American Honda") is a subsidiary of Honda Motor headquartered in Torrance, California.   American Honda conducts the sale, marketing, and operational activities for Honda cars, trucks, and sport utility vehicles automobile parts in the United States.  American Honda manufactures and assembles its vehicles for sale in the United States in automobile plants located in Greensburg, Indiana, East Liberty, Ohio, Lincoln, Alabama, and Marysville, Ohio.

58.    Defendants Honda Motor and American Honda are collectively referred to as "Honda" or "Honda Defendants."   Honda vehicles sold in the United States contain airbags manufactured by the Takata Defendants.  NHTSA has recalled to-date the following Honda vehicles for having faulty Takata airbags, totaling 5,051,364 vehicles: 2001-2007 Honda Accord; 2001-2005 Honda Civic; 2002-2006 Honda CR-V; 2003-2011 Honda Element; 2002-2004 Honda Odyssey; 2003-2007 Honda Pilot; 2006 Honda Ridgeline; 2003-2006 Acura MDX; 2002-2003

Acura TL/CL; and 2005 Acura RL.

59.     Defendant Ford Motor Company ("Ford") is headquartered in Dearborn, Michigan. Ford develops, manufactures, distributes, and services vehicles, parts, and accessories worldwide, including in the United States. Ford vehicles sold in the United States contain airbags manufactured by the Takata Defendants. NHTSA has recalled to-date the following Ford vehicles for having faulty Takata airbags, totaling 58,669 vehicles: 2004 Ranger; 2005-2006 GT; and 2005-2007 Mustang.

60.     Defendant Fuji Heavy Industries Ltd. ("Fuji") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan. Fuji develops, manufactures, distributes and services passenger cars and their components under the Subaru brand. Fuji also handles the manufacture, repair, and sales of aerospace-related machinery; and the manufacture, sales, and repairs of generators, engine-equipped machinery, agricultural machinery, construction machinery and other machine tools.

61.     Defendant Subaru of America, Inc. ("Subaru") is a wholly owned subsidiary of Fuji headquartered in Cherry Hill, New Jersey. Subaru markets and distributes Subaru vehicles, parts and accessories throughout the United States.

62.     Defendants Fuji and Subaru are collectively referred to as "Subaru" or Subaru Defendants." Subaru vehicles sold in the United States contain airbags manufactured by the Takata Defendants. NHTSA has recalled to-date the following Subaru vehicles for having faulty Takata airbags, totaling approximately 5,000 vehicles: 2003-2005 Baja, 2003-2005 Legacy, 2003-2005 Outback, 2004-2005 Impreza.

63.     Defendant Nissan Motor Company, Ltd. ("Nissan Motor") is a foreign, for-profit corporation with its principal place of business in Yokohama, Japan. Nissan Motor is Japan's second-largest automotive company. Nissan Motor develops, manufactures, distributes and services more than sixty models of vehicles worldwide, including in the United States, under the Nissan,

Infiniti and Datsun brands.

64.     Defendant Nissan of North America, Inc. ("Nissan") is a subsidiary of Nissan Motor headquartered in Smyrna, Tennessee.  Nissan's operations consist of automotive styling, engineering, consumer and corporate financing, sales and marketing and distribution and manufacturing.

65.     Defendants Nissan Motor and Nissan are collectively referred to as "Nissan" or "Nissan Defendants."  Nissan vehicles sold in the United States contain airbags manufactured by the Takata Defendants. NHTSA has recalled to-date the following Nissan vehicles for having faulty Takata airbags, totaling 708,000 vehicles: 2001-2003 Nissan Maxima, 2001-2004 Nissan Pathfinder, 2002-2004 Nissan Sentra, 2001-2004 Infiniti I30/I35, 2002-2003 Infiniti QX4, 2003-2005 Infiniti FX35/FX45.

66.     Defendant Toyota Motor Corporation ("Toyota") is the world's largest automaker and the largest seller of automobiles in the United States.   Toyota is a Japanese Corporation headquartered in Toyota City, Aichi Prefecture, Japan.

67.     Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota U.S.A.") is a wholly-owned subsidiary of Toyota Motor Corporation and is responsible for the marketing, sales, and distribution in the United States of automobiles manufactured by Toyota Motor Corporation. Toyota U.S.A. is headquartered in Torrance, California and is a subsidiary of Toyota Motor Corporation.

68.     Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is headquartered in Erlanger, Kentucky with major operations in Arizona, California, and Michigan. TEMA is responsible for Toyota's engineering design and development, research and development, and manufacturing activities in the U.S., Mexico, and Canada.  TEMA is a subsidiary of Toyota Motor Corporation.

69.     Defendants Toyota, Toyota U.S.A., and TEMA are collectively referred to as "Toyota" or "Toyota Defendants."   Toyota vehicles sold in the United States contain airbags

manufactured by the Takata Defendants. NHTSA has recalled to-date the following Toyota vehicles for having faulty Takata airbags, totaling 877,000 vehicles: 2002-2005 Lexus SC; 2002-2005 Toyota Corolla; 2003-2005 Toyota Corolla Matrix; 2002-2005 Toyota Sequoia; and 2003-2005 Toyota Tundra.

70.    Defendant Chrysler Group, LLC ("Chrysler") is headquartered in Auburn Hills, Michigan.   Chrysler markets and distributes Chrysler vehicles, parts and accessories throughout the United States.   Chrysler vehicles sold in the United States contain airbags manufactured by the Takata Defendants. NHTSA has recalled to-date the following Chrysler vehicles for having faulty Takata airbags, totaling 371,309 vehicles: 2003-2008 Dodge Ram 1500; 2005-2008 Dodge Ram 2500; 2006-2008 Dodge Ram 3500; 2006-2008 Dodge Ram 4500; 2008 Dodge Ram 5500; 2005-2008 Dodge Durango; 2005-2008 Dodge Dakota; 2005-2008 Chrysler 300; and 2007-2008 Chrysler Aspen.

71.    Defendants Honda, Ford, Subaru, Nissan, Toyota, and Chrysler collectively are referred to as "Vehicle Manufacturer Defendants."   Vehicle Manufacturer Defendants, along with Defendant Takata, are collectively are referred to as "Defendants."

## FACTUAL ALLEGATIONS

**Takata is a Major Manufacturer of Airbags and Inflators**

72.    Defendant Takata is the world's second largest manufacturer of automotive safety devices, including airbags. Takata was a pioneer in developing driver side airbags, being the first to market driver side airbags in the early 1980s.   Takata has supplied airbags to U.S. consumers and to state and local governmental purchasers since at least 1983.

73.    Airbags made up 37.3% of Takata's automotive safety products business in 2007.

74.    Takata also develops other safety technologies, including cushions and inflators, which are components of Takata-manufactured airbags.

75.    The airbags at issue in this case were developed by Takata in the late 1990s in an

effort to make airbags more compact.  The redesigned airbags are inflated by means of an explosive based on a common compound used in fertilizer.  That explosive is encased in a metal canister.

76.    The two Takata plants that manufactured the airbags at issue in this Complaint are located in Moses Lake, Washington and Monclova, Mexico.  These plants also manufacture airbag inflators.

77.    Airbags manufactured by Takata, including the airbags at issue in this case, have been installed in vehicles manufactured by at least ten different automakers, including Honda.

78.    Takata Corporation has, since at least 2007, claimed to prioritize driver safety as its "dream."[10]

79.    Based on that "dream," they claimed to be "motivated by the preciousness of life" and pledged to both "communicate openly and effectively."[11]  Takata has failed to live up to its dream by manufacturing, distributing, and selling airbags that can cause serious bodily injury or death.

**Honda Field Reports and Takata Internal Testing Reveal a Problem**

80.    Takata has known since at least 2001 that Takata airbags, and particularly the inflator component, were defective, as Isuzu was forced to make a recall that year due to exploding Takata airbags.

81.    In 2004, a Takata airbag violently exploded in a Honda Accord, shooting out metal fragments and injuring the car's driver.  After Honda alerted Takata to the ruptured airbag, Takata reported back to Honda that it was also unable to find a cause for the airbag failure.[12]  A former Takata lab employee who examined that airbag reported that the "inflator that ruptured in the Accord and injured the car's driver that year 'looked like it had exploded, and had a hole punched

---

[10] Takata Company Investor's Meeting Presentation- Investment Highlights, FY2007, at 3.
[11] *Id.*
[12] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

out of the side of the canister.'"[13]   Nevertheless, Honda "determined that the supplier 'provided a reasonable explanation of this event as an anomaly,'" and did not issue a recall or seek the involvement of federal safety regulators.[14]

82.    *The New York Times* has revealed, however, that during the summer of 2004, after the airbag explosion in Alabama, Takata secretly conducted tests on 50 airbags, which were retrieved from scrapyards. The tests were performed after normal work hours and on weekends and holidays in Auburn Hills, Michigan and were supervised by Al Bernat, Takata's then Vice President for Engineering.[15]

83.    Two of the airbag inflators that were tested showed cracks and "rapid disassembly" (or exploded), and Takata engineers theorized that a welding problem with the inflator's canister, which holds the airbag's explosives, made the airbags vulnerable to split or rupture. In response, Takata engineers attempted to design prototypes to remedy the issue.

84.    After three months of testing, however, Takata ordered the testing halted. Lab employees were instructed to destroy all of the data related to the testing, including video and computer backups. Moreover, the airbag inflators and the prototypes were ordered to be disassembled and disposed. According to a former Takata employee, "All the testing was hush-hush … Then one day it was, 'Pack it all up, shut the whole thing down.' It was not standard procedure."

85.    These tests were not disclosed to federal regulators.

86.    Moreover, according to *The New York Times* article, internal Takata documents show that Takata faced a series of quality control problems related to its airbags. In particular, airbags were being delivered to automakers wet or damaged. Airbags were not always properly inspected, and checks that had been introduced to keep airbags in the appropriate condition were being

---

[13] *Id.*
[14] *Id.*
[15] *Id.*

ignored.[16]

87.    Takata was aware that the mishandling of airbags and airbag inflators created a danger. A Takata local manager noted in October 2005 that "[t]he propellant arrangement inside is what can be damaged when the airbags are dropped," which is "why it is important to handle our product properly."[17]

88.    Nonetheless, even after stricter quality controls were introduced, Takata's production facilities would resist taking back damaged or wet airbags, in an effort to keep up with the demand of automakers.[18]

89.    In February, June and August of 2007, Honda notified Takata of additional airbag explosion incidents.[19]  All three involved defective airbags driving metal fragments into the faces and limbs of car passengers upon deployment of the airbags. These incidents triggered an internal investigation by Takata, including a survey of inflators; however, Honda did not initiate a recall or provide information about the airbag ruptures to federal regulators because it "wanted to await the outcome of a 'failure mode analysis' being conducted by Takata."[20]

90.    Honda settled financial claims with the individuals injured by the airbags. These settlements were confidential.

91.    Honda filed a standard report with U.S. safety regulators on the initial air bag injury in 2004, and followed up with similar filings on the incidents in 2007.  Inexplicably, Honda did not issue any recalls and never informed safety regulators of the most critical detail of these incidents: that the airbags posed a substantial risk of serious injury or death when deployed.

92.    *The New York Times* reported that, approximately three months later in 2007, "Takata engineers laid out a theory about what might have gone wrong: Between late 2001 and late 2002,

---

[16] Hiroko Tabuchi, "Takata Saw and Hid Risk in Airbags in 2004, Former Workers Say," *New York Times* (Nov. 6, 2014).
[17] *Id.*
[18] *Id.*
[19] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[20] *Id.*

workers at a Takata factory in Monclova, Mexico, had left out moisture-sensitive explosives on the plant floor, making them prone to 'overly energetic combustion.'"[21] However, Takata purportedly assured Honda "that by November 2002, it had overhauled production processes to 'assure proper handling' of all its explosives."[22] Based on those findings and assurances, Honda and Takata "elected to continue monitoring the problem, according to Honda."[23]   Nevertheless, "internal documents suggest Takata engineers scrambled as late as 2009 to repair a machine at its Monclova plant that pressed explosive propellant powder into pellets after 'inflaters tested from multiple propellant lots showed aggressive ballistics,' according to the internal presentation in June 2009."[24]

93.    Then, without notifying the vehicles' owners, "Honda started collecting Takata-made airbag inflaters returned to dealers as part of unrelated warranty claims, which were then sent to Takata engineers. Old airbag inflaters from Honda cars at scrap yards were also retrieved and studied."[25] After a yearlong study, "Takata engineers told Honda that they were convinced moisture was at the root of the defect. But only a small number of inflaters were affected, Takata told the Honda officials."[26]

94.    Despite this knowledge, neither Honda nor Takata publicly disclosed the danger of the Takata-manufactured exploding airbags to consumers for many years after the first reported incident in 2004, "despite red flags – including three additional ruptures reported to Honda in 2007."[27]

**2008: Recall 08V593**

95.    Takata shared the results of the inflator survey analysis with Honda in November of 2008.  That analysis indicated an airbag inflator issue.  The results triggered a Honda recall, but

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] Hiroko Tabuchi, "Takata Saw and Hid Risk in Airbags in 2004, Former Workers Say," *New York Times* (Nov. 6, 2014).
[25] *Id.*
[26] *Id.*
[27] *Id.*

for only about 4200 of its vehicles.[28]  This recall occurred over four years after the first airbag explosion incident in a Honda car.

96.     The November 2008 recall involved certain 2001 Honda Accord and Civic vehicles to replace airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion ("2008 Recall").[29]  Honda reported to NHTSA at that time "that it had identified all 'possible vehicles that could potentially experience the problem.'"[30] (emphasis added)

**2009: Recall 09V259**

97.     Less than six months after Honda's November 2008 recall, in April 2009, the airbag in the Honda Civic, "which was not among the recalled vehicles, exploded after a minor accident in Orlando, Fla."[31] According to articles reporting on the incident, the "air bag explosion sent a two-inch piece of shrapnel flying. When highway troopers found [the driver], with blood gushing from a gash in her neck, they were baffled by the extent of her injuries. At Honda, engineers soon linked the accident to the previous ruptures."[32]

98.     The following month, in May 2009, an Oklahoma driver was killed "when the airbag in her 2001 Honda Accord exploded out of her steering wheel after a minor crash."[33]  Following this accident and fatality, "Honda only filed the required early warning reports, which do not allow for specifics about the [airbag] ruptures."[34]

99.     Two additional deaths were subsequently "linked to exploding air bags, in Oklahoma and Virginia, both in 2009 and [both] in Honda vehicles."[35]

---

[28] *See* NHTSA Campaign Number 08V593000 (Nov. 14, 2008), http://www-odi.nhtsa.dot.gov/owners/SearchResults?searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=08V593&refurl=email (last visited Nov. 13, 2014).
[29] Nov. 11, 2008 Honda Recall Letter to NHTSA, at 2.
[30] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[31] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014); Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014).
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014).

100.    Takata then reported to Honda that the defective airbag components had been made at its factory in Moses Lake, Washington. At the time, Takata engineers explained to Honda that "[b]etween 2000 and 2002, a flaw in a machine that presses air bag explosives into wafers had made the explosives unstable."[36] The Takata engineers further explained to Honda that with "the defective air bags, explosives in the metal inflater, which would normally burn down and produce the nitrogen gas to inflate the air bag, instead burn aggressively and cause the inflater to burst, shooting hot fragments through the air bag's fabric."[37]

101.    *The Wall Street Journal* subsequently reported that, after two years of investigation, "Honda and Takata found that a machine at Takata's Moses Lake factory in Washington state had failed to compress chemicals firmly enough. That left the inflators vulnerable to moisture, potentially causing the bags to inflate more forcefully than they were supposed to."[38] At that time, Takata "acknowledged that the defect covered a wider range of vehicles than initially estimated, but explained that the plant had made numerous upgrades to its machinery in late 2002, which it thought had improved the quality of its explosives."[39]

102.    In June of 2009, Takata provided a follow up report to Honda on its November 2008 analysis, stating that issues related to propellant production appeared to have caused the improper inflator performance.    Honda subsequently received two more claims of "unusual deployments."

103.    As a result of Takata's June 2009 follow up report and the additional claims of "unusual driver air bag deployments," on June 30, 2009, Honda expanded the recall to 440,000 vehicles, which included 2001 and 2002 Civic, Accord, and Acura vehicles ("2009 Recall").[40]

---

[36] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[37] *Id.*
[38] Colum Murphy and Eric Pfanner, "Takata Faces Rocky Road After Recalls," *The Wall Street Journal* (Oct. 1, 2014).
[39] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[40] *See* NHTSA Campaign Number 09V259000 (July 8, 2008), http://www-odi.nhtsa.dot.gov/owners/SearchResults?searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=09V259&refurl=email (last visited Nov. 13, 2014).

104.    In August 2009, NHTSA Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in the 2008 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."[41]

105.    NHTSA also wanted to know "the difference between the driver's airbag inflators in those vehicles from the inflators in the 09V-259 vehicles and explain how this distinction, or any other between the two sets of vehicles, convinced HMC at the time that it did not need to include the latter set in the 08V-593 recall population."[42]

106.    NHTSA Recall Management Division further requested that Honda provide complaints, lawsuits, warranty claims, and field reports, along with an explanation of the "unusual deployments" and Honda's investigative efforts.[43]

107.    In Honda's September 2009 reply to NHTSA, the automaker said that its information about the "unusual deployments" came from Takata:   "We understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."[44]  Honda further stated:

> Based on our current understanding of the causal factors and the characteristics of suspect inflators as determined by TK Holdings, Inc., we believe that we have included all vehicles that could be affected by this defect.

108.    Honda also reported, based on information from Takata, the problem with the airbags was isolated to the "production of the airbag propellant prior to assembly of the inflators."  Specifically, the cause was "related to the process of pressing the propellant into wafers that were later installed into the inflator modules," and limited to "one production process" involving one high-precision compression press that was used to form the propellant into wafers, the automaker told NHTSA.[45]

109.    Honda also disclosed to NHTSA that it had fielded nine complaints and one

---

[41] Aug. 19, 2009 Letter from NHTSA to American Honda Motor Co.
[42] Id.
[43] Id.
[44] Sept. 16, 2009 Letter from Honda American Motor Co. to NHTSA, at 1.
[45] Id. at 1.

lawsuit related to the 2008 and 2009 Recalls. Honda also, for the first time, told NHTSA about the 2004 incident involving an "unusual deployment" of the vehicles airbag. Honda claimed that it "only recently were reminded of this incident," and that, until recently, Honda "had not associated it with the [2008 Recall] campaign."[46]

110. At least four complaints have been submitted to NHTSA by Honda vehicle operators reporting defective airbag deployments that have released metal shards into the cabin of the Honda vehicle.

**Takata's Contact with NHTSA**

111. In its communications with NHTSA, Takata continually gave misleading or incorrect information about the airbags it manufactured that were part of the recalls.

112. On November 20, 2009, NHTSA requested information from Takata as part of their ongoing investigation into the airbag inflators that triggered the 2009 Recall.

113. In December 2009, a Honda Accord hit a mail truck in Virginia. The vehicle's airbag exploded, "propelling shrapnel into [the driver's] neck and chet, and she bled to death in front of her three children, according to a lawsuit filed by her family."[47]

114. Takata submitted a partial response to NHTSA on December 23, 2009 ("Partial Response"), and then a full response on February 19, 2010 ("Full Response"). Both responses provided vague and misleading information about the seriousness of the problem.

115. In both responses, Takata asserted that there were no substantive design differences between the inflators in the airbags at issue in the two recalls. However, in the Full Response, Takata states that there were, in fact, differences in the production processes between the lots.

116. In both responses, Takata asserted that the defects only existed in specific lots

---

[46] Id. at 4.
[47] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

manufactured between certain dates. They claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000 and December 1, 2000. They also claimed that inflators involved in the 2009 Recall were manufactured between August 23, 2000 and February 25, 2001.

117.    Takata did not provide the dates the inflators were shipped, as NHTSA requested, because, as Takata admitted, its records did not have that information. Instead, they gave just the manufacturing dates.

118.    In both the Partial Response to NHTSA on December 23, 2009, and the Full Response on February 19, 2010, Takata stated that: "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by the recalls in 2008 and 2009 **to any customers other than Honda. The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda**."[48] This statement would prove to be untrue.

119.    In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press, although Takata recommended to Honda that a small number of other vehicles with propellant processed on a different press be recalled as well.

120.    In the Full Response, Takata asserted that the defective parts were all manufactured on a particular press (the "Stokes press") in a single manufacturing plant. Takata further asserted that while they did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore Takata is convinced that the inflators sold [redacted] contain no safety-related defect."[49]

121.    Takata wrote in its Full Response that it "believed – [redacted] – that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that

---

[48] Dec. 23, 2009 Letter from Takata to NHTSA, at 2; Feb. 19, 2010 Letter from Takata to NHTSA, at 2.
[49] Feb. 19, 2010 Letter from Takata to NHTSA, at 5.

had a risk of producing overly energetic combustion. This recommendation, as well as the analysis that supported it, was presented to Honda on June 12 2009."[50]

122.    NHTSA was apparently satisfied with Takata's February 19, 2010 responses to its November 20, 2009 request for information, because on May 6, 2010, NHTSA closed its investigation into the Takata-manufactured airbags. In summary, NHTSA stated:

> This [Recall Query "RQ"] investigation was opened to collect and analyze additional information to better evaluate the scope and timeliness of Honda's two safety recalls addressing rupturing of the driver's side air bag inflators (08V-593 and 09V-259).
>
> In an earlier response to [Recall Management Division's "RMD's"] request for information, Honda indicated that the second recall (09V-259), essentially an expansion of the first (08V-593), was necessary since later information informed that the source of the defect was different than originally postulated, and so the scope of the vehicles affected changed. Honda indicated that it had relied on its supplier of the air bag inflators, Takata, Inc. (Takata), in studying the possible sources of the inflator ruptures and identifying the recall populations. Accordingly, RMD issued a request for information to Takata on November 20, 2009, and Takata provided a partial response on December 23, 2009. Takata then provided its complete response on February 19, 2010.
>
> Takata informed [Office of Defects Investigation "ODI"] that, after analysis of several ruptured inflators, Takata and Honda initially attributed the defect to handling of the propellant during inflator assembly that could have yielded increased moisture levels that, when coupled with thermal cycling in automobiles over time, could lead to reduced propellant density and overly aggressive combustion during air bag deployment. However, it discovered upon review of inflators returned from the 08V-593 recall campaign, some of which fell outside the manufacturing range when Takata suspected the propellant was exposed to elevated moisture, that the source of the defect was more likely due to problems with a specific compression press (Stokes press) used to form the inflator's propellant. Specifically, the propellant tablets produced by the press were found to be less dense, and therefore more susceptible to overly aggressive combustion during air bag deployment. Takata identified the manufacturing time frame over which the tablets were shown to have less dense properties as the end of calendar year 2000. Takata informed Honda of its discovery on or about June 12, 2009. Honda made its defect decision and then notified NHTSA of it on June 30, 2009. Honda then supplemented its filing with an identification of the specific vehicles to be included in the campaign, as well as identifying additional models to be included, on July 29, 2009.

---

[50] *Id.* at 11-12.

As with the 08V-593 campaign, Takata examined inflators returned from the 09V-259 campaign, and some of which were manufactured outside of the range when the Stokes press was found to have produced less dense propellant (beyond the end of February 2001). It provided those findings to Honda and Honda decided to expand safety recall 09V-259 to include all vehicles with inflators containing propellant manufactured using the Stokes press. Honda notified NHTSA of its decision on February 9, 2010.

*Based upon all available information, there is insufficient information to suggest that Honda failed to make timely defect decisions on information it was provided. Also, given that all inflators with propellant manufactured using the Stokes press have been recalled, there are no additional vehicles to be investigated and campaigned. Accordingly, this RQ is closed.* (Emphasis added)

123.    As The New York Times subsequently reported, in the months following NHTSA's 2009/2010 request for information, Takata engineers came up with yet another explanation for the ruptures: "Beginning in September 2001, machine operators at the Moses Lake plant could have inadvertently switched off an 'auto reject' function that weeded out poorly made explosives that can become unstable, they said, according to regulatory filings and Honda officials."[51] However, Takata assured Honda at the time that, "as part of the upgrades at that plant, in September 2002, the supplier had added a locking mechanism that prevented workers from turning the auto-reject function off, according to filings later made by Takata."[52]

124.    The Wall Street Journal further reported that "Honda and Takata discovered more problems. At Moses Lake, employees had switched off a mechanism that automatically checked whether the right amount of propellant was loaded in inflaters; at a plant in Monclova, Mexico, a dehumidifier that kept parts dry hadn't been turned on. At times poor record-keeping meant Honda and Takata couldn't figure out which cars had defective bags. After each discovery, recalls mounted."[53]

125.    Both Honda and Takata represented to the public and NHTSA that the total number of affected vehicles was quite small.

---

[51] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[52] *Id.*
[53] Colum Murphy and Eric Pfanner, "Takata Faces Rocky Road After Recalls," *The Wall Street Journal* (Oct. 1, 2014).

**2010: Recall 10V041**

126.    In 2010, merely months after its previous recall, Honda announced a third recall for an additional 379,000 vehicles, including 2002 Honda CR-V, 2002 Honda Odyssey, 2003 Honda Pilot, 2002-2003 Acura 3.2TL, and 2003 Acura 3.2CL vehicles, while adding more 2001 and 2002 Accords and Civics to its 2009 recall list ("2010 Recall").

127.    Later in 2010, a 2001 Honda Civic was stopped at a red light in Georgia when the Takata-manufactured airbag "spontaneously deployed." [54] The driver of that vehicle "was hit by metal shards from the canister that housed the air bag's propellant; the shards were sharp enough to penetrate the fabric of the air bag and puncture her neck and carotid artery."[55]

128.    Honda's explanation for the airbag defects changed yet again.  Honda explained that there are two different manufacturing processes utilized in the preparation of an airbag propellant.  While one process is within specification, the other is not.  Honda's expanded recall reached those vehicles employing airbags that had utilized manufacturing processes not within specification.

**2011: Recall 11V260**

129.    Recall No. 11V-260, issued by Honda in April 2011 ("2011 Recall"),  involved an additional 603,241 Honda and Acura vehicles, and involved the following models: 2001-2002 Honda Accord, 2001-2002 Honda Civic, 2002-2003 Honda CR-V, 2002 Honda Odyssey, 2002-2003 Acura TL, and 2003 Acura CL.63 This recall campaign was related to prior recalls 08V-593 (Nov. 2008), 09V-259 (July 2009) and 10V-041 (Feb. 2010).

130.    As part of this recall, Honda filed a Part 573 Defect and Noncompliance report for 2,430 replacement service part airbag modules that might have been installed in vehicles covered by previous recall expansions.

131.    In September 2011, a driver in Puerto Rico crashed his Honda Civic, "deploying

---

[54] Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014).
[55] *Id.*

airbags that launched 'sharp pieces of metal' toward him, causing extensive injuries," according to a lawsuit he filed against Honda.[56]  Although Honda reached a confidential settlement with the driver in 2013, it "does not appear to have filed a report on the case with regulators."[57]

132.    Honda reported its death and injury tallies to regulators only in a confidential submission in December 2011, when it issued a fifth limited recall for the rupture defect, according to NHTSA.[58]  That recall expanded Recall No. 11V-260 (April 2011) to include an additional 272,779 Honda and Acura vehicles. The expanded recall also included 604 airbags sold as replacement parts, however, because Honda was "unable to ascertain on which vehicles the 604 replacement air bags were installed, an additional 603,241 vehicles" were also recalled.[59]

133.    Collectively, the total number of Honda and Acura vehicles that had been recalled by the end of 2011 because they contained Takata-manufactured airbags was over 1.7 million vehicles.[60]

**2013: Recall 13V132**

134.    By 2013, it became clear that the defective airbag issue was far more widespread than Takata or Honda initially reported to NHTSA.

135.    According to Honda's 2013 Defect and Noncompliance report, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible."  Honda found that even its so-called "healthy" airbags could abnormally combust in certain conditions.

136.  On February 8, 2013, NHTSA and Honda met to discuss the "ongoing investigation" into Honda's defective Takata airbags.  Honda stated:

---

[56] Hiroko Tabuchi and Christopher Jensen, "It Looked Like a Stabbing, but Takata Airbag Was the Killer," *New York Times* (Oct. 20, 2014).
[57] *Id.*
[58] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[59] *See* NHTSA Campaign Number 11V260000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=11V260&refurl=email (last visited Nov. 13, 2014).
[60] *Id.*

A recreation of propellant production using the same methods as were used during 2001-2002 production periods indicated that it was possible for propellant produced during 2001-2002 to be manufactured out of specification without the manufacturing processes correctly identifying and removing the out of specification propellant. Separately, Honda was informed by the supplier of another potential concern related to airbag inflator production that could affect the performance of these airbag modules.[61]

137. On April 10, 2013, Honda filed a Recall Notification ("2013 Recall") for their 2001-2003 Civic, 2002-2003 CR-V, and their 2002 Odyssey vehicles with NHTSA. In that notification, Honda asserted that 561,422 vehicles could be affected by the following part defect:

**Defect description:**
In certain vehicles, the passenger's (frontal) airbag inflator could produce excessive internal pressure. If an affected airbag deploys, the increased internal pressure may cause the inflator to rupture. In the event of an inflator rupture, metal fragments could be propelled upward toward the windshield, or downward toward the front passenger's foot well, potentially causing injury to a vehicle occupant.[62]

138. On April 11, 2013, Takata filed a Defect Information Report titled "Certain Airbag Inflators Used as Original Equipment" ("Takata DIR"). In that report, Takata identified the defective airbags as follows:

Certain airbag inflators installed in frontal passenger-side airbag modules equipped with propellant wafers manufactured at Takata's Moses Lake, Washington plant during the period from April 13 2000 (start of production) through September 11, 2002…and certain airbag inflators manufactured at Takata's Monclova, Mexico plant during the period from October 4, 2001 (start of production) through October 31, 2002….[63]

139. It wasn't until its April 2013 Report that Takata finally admitted that its affected inflators were installed as original equipment in vehicles manufactured by car manufacturers other than Honda, including Toyota, Nissan, Mazda, and BMW.[64]

140. Takata asserted that it did not know how many inflators were installed in vehicles, as it did not have those records. While it did not have the information to estimate the number of

---

[61] April 10, 2013 Letter to NHTSA, at 2-3.
[62] Id. at 2.
[63] Takata April 11, 2013 DIR at 3.
[64] Id. at 2-3

vehicles affected, Takata still insisted that the total number of installed inflators would be extremely low.[65]

141.    Takata described the defect as follows:

> Some propellant wafers produced at Takata's plant in Moses Lake, Washington, between April 13, 2000 and September 11, 2002 may have been produced with an inadequate compaction force. . . . In addition some propellant wafers used in inflators produced at Takata's plant in Monclova, Mexico between October 4, 2001 and October 31, 2002, may have been exposed to uncontrolled moisture conditions.  These wafers could have absorbed moisture beyond the allowable limits . . . . In both cases propellant could potentially deteriorate over time due to environmental factors, which could lead to over-aggressive combustion in the event of an airbag deployment.  This could create excessive internal pressure within the inflator and the body of the inflator could rupture.[66]

142.    Also on April 11, 2013, after an additional "two air bag ruptures in Corollas in Japan," Toyota issued a limited recall for vehicles containing defective Takata airbags.[67] Specifically, Toyota issued Recall No. 13V-133, which involved 844,277 Toyota vehicles, and involved the following models: 2003-2004 Toyota Corolla, 2002-2004 Toyota Sequoia, 2003-2004 Toyota Tundra, 2003-2004 Toyota Corolla Matrix, and 2002-2004 Lexus SC (as well as for GM's 2002-2004 Pontiac Vibe, which was made on the same manufacturing line as one of Toyota's models). The recall was necessary "to address a safety defect in the passenger side frontal air bag which may produce excessive internal pressure causing the inflator to rupture upon deployment of the air bag. … In the event of a crash necessitating deployment of the passenger's frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants."[68]

143.    On April 12, 2013, Nissan issued a recall for vehicles containing defective Takata airbags. Recall No. 13V-136 involved approximately 438,302 Nissan vehicles, and involved the

---

[65] *Id.* at 3
[66] *Id.* at 3-4
[67] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).
[68] *See* NHTSA Campaign Number 13V133000, http://www-odi.nhtsa.dot.gov/owners/SearchResults.action?searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=13V133&refurl=email (last visited Nov. 13, 2014).

following models: 2001-2003 Nissan Maxima, 2001-2003 Nissan Pathfinder, 2002-2003 Nissan Sentra, 2003 Infiniti FX35, 2003 Infiniti FX45, 2001 Infiniti I30, 2002-2003 Infinity I35, and 2002-2003 Infiniti QX4. The recall was needed "to address a safety defect in the passenger side frontal air bag which may produce excessive internal pressure causing the inflator to rupture upon deployment of the air bag. … In the event of a crash necessitating deployment of the passenger's frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants."[69]

**Recalls and Notices Relating to Defective Airbag Inflators in Non-Honda Vehicles**

144.    In April of 2013, based on Takata's new admissions, six major automakers, including Nissan, Mazda, BMW, Pontiac, and Honda, issued recalls of **3.6 million** vehicles containing Takata airbags.

145.    In September 2013, a California driver was killed after the airbag in his 2002 Acura ruptured. As *The New York Times* reported:

> The authorities have not determined a reason for the injuries, though his coroner's report cited tears in his airbag and facial trauma from a foreign object.
>
> And problems persist with Honda's reporting of potential defects.
>
> In at least four more recent suspected ruptures, including the one linked to [the California driver's] death, Honda has not filed a so-called early warning report with safety regulators, as is required in cases where there is a claim of defect that resulted in an injury or death, according to case lawyers and legal filings.[70]

146.    Chrysler and Ford similarly announced limited regional NHTSA recalls for vehicles originally sold or currently registered in Florida, Puerto Rico, Hawaii, or the U.S. Virgin Islands, and equipped with Takata airbag inflators.

147.    In June 2014, a low-speed accident involving a 2005 Honda Accord in California

---

[69]    *See* NHTSA Campaign Number 13V136000, http://www-odi.nhtsa.dot.gov/owners/SearchResults.action?searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=13V136 (last visited Nov. 13, 2014).
[70] Hiroko Tabuchi and Christopher Jensen, "It Looked Like a Stabbing, but Takata Airbag Was the Killer," *New York Times* (Oct. 20, 2014).

caused the car's driver air bag "to 'detonate,' sending hot metal and plastic shrapnel into the cabin."[71]

148.    On June 11, 2014, NHTSA's Office of Defects Investigation ("ODI") published an ODI Resume for a preliminary evaluation of Investigation No. PE 14-016. That document stated that NHTSA was opening an investigation "in order to collect all known facts from [Takata] and the vehicle manufacturers that it believes may have manufactured vehicles equipped with inflators produced during the same period as those that have demonstrated rupture events in the field."

149.    Also on June 11, 2014, Takata informed NHTSA that it "believes that an [sic] number of the inflators identified above were provided to the following vehicle manufacturers for use in vehicles sold in the United States (the manufacturers are listed in alphabetical order): BMW, Chrysler, Ford, Honda, Mazda, Nissan, and Toyota." Takata's June 11, 2014 letter further stated:

> If we determine that any of those inflators were sold to other vehicle manufacturers, we will let you know promptly.
>
> ***Takata is not certain which models or model years of vehicles are equipped with the subject inflators, and it does not know how many of those vehicles were sold in or are registered in the States to be covered by the requested field actions.*** That information will need to be obtained from the affected vehicle manufacturers. (Emphasis added)

150.    Additionally, on June 11, 2014, Toyota issued a second recall for vehicles containing defective Takata airbags. This recall involved over 2.3 million vehicles worldwide, and over 844,000 vehicles in the United States. Specifically, Recall No. 14V-312 involved 844,277 Toyota vehicles, and involved the following models: 2002-2004 Toyota Sequoia, 2003-2004 Toyota Corolla, 2003-2004 Toyota Corolla Matrix, 2003-2004 Toyota Tundra, and 2002-2004 Lexus SC (as well as the 2003-2004 Pontiac Vibe vehicles, which were made on the same manufacturing line as one of Toyota's models). The recall was necessary "to address a safety defect in the passenger side frontal air bag inflator which may produce excessive internal pressure causing the inflator to rupture upon

---

[71] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

deployment of the air bag. … In the event of a crash necessitating deployment of the front passenger's frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants."[72]

151.    Toyota's expanded recall of 2.3 million vehicles followed Takata's admission that it had "failed to keep adequate quality-control records, making it difficult to identify vehicles with potentially defective air bags."[73] *The New York Times* reported that the expanded recall was "the second time Toyota has had to recall the vehicles because a defective inflator for the passenger-side air bag could crack, possibly sending metal fragments into the compartment or causing "thermal damage" to the instrument panel."[74]

152.    Soon after Toyota's announcement that it was recalling an additional 2.3 million vehicles, NHTSA reported that it had opened an investigation into other automakers that used parts made by Takata to see if those companies' vehicles should be recalled as well.[75]

153.    On June 19, 2014, Ford, Mazda and Nissan issued recalls for over 135,000 vehicles containing defective Takata airbags. Each of these recalls was necessary because "[u]pon deployment of the passenger side frontal air bag, excessive internal pressure may cause the inflator to rupture. … In the event of a crash necessitating deployment of the passenger frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the vehicle occupants." More specifically:

> (a) Recall No. 14V-343 involved 58,669 Ford vehicles, and involved the following models: 2005-2007 Ford Mustang, 2005-2006 Ford GT, and 2004 Ford Ranger.[76]

---

[72] *See* NHTSA Campaign Number 14V312000, http://www-odi.nhtsa.dot.gov/owners/SearchResults? refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V312 (last visited Nov. 13, 2014).
[73] Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014).
[74] Christopher Jensen and Hiroko Tabuchi, "Toyota Orders Big Recall Ties to an Air Bag," *New York Times* (June 11, 2014).
[75] *Id.*
[76] *See* NHTSA Campaign Number 14V343000, http://www-odi.nhtsa.dot.gov/owners/SearchResults? refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V343 (last visited Nov. 13, 2014).

(b) Recall No. 14V-344 involved 46,673 Mazda vehicles, and involved the following models: 2003-2007 Mazda6, 2006-2007 Mazdaspeed6, 2004-2005 Mazda MPV, 2004-2008 Mazda RX-8, and 2004 Mazda B-Series Truck.[77]

(c) Recall No. 14V-701 involved 29,998 Nissan vehicles, and involved the following models: 2003-2004 Nissan Pathfinder, 2004 Nissan Sentra, 2003-2005 Infiniti FX35, 2003-2005 Infiniti FX45, and 2003-2004 Infiniti I35.[78]

154.    On June 20, 2014, Honda issued additional Recalls for a total of nearly 4.5 million

Honda and Acura vehicles that contained defective Takata-manufactured airbags:

(a) Recall No. 14V-349 involved 988,440 Honda vehicles, and involved the following models: 2002-2003 Honda Civic, 2002-2003 Honda CR-V, 2002-2003 Honda Odyssey, 2003 Honda Accord, 2003 Honda Element, 2003 Honda Pilot, and 2003 Acura MDX. The recall was necessary "to address a safety defect in the passenger side frontal air bag which may produce excessive internal pressure causing the inflator to rupture upon deployment of the air bag. … In the event of a crash necessitating deployment of the passenger's frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants."[79]

(b) Recall No. 14V-351 involved 2,803,214 Honda vehicles, and involved the following models: 2001-2007 Honda Accord, 2001-2005 Honda Civic, 2002-2006 Honda CR-V, 2003-2011 Honda Element, 2002-2004 Honda Odyssey, 2003-2007 Honda Pilot, 2006 Honda Ridgeline, 2003-2006 Acura MDX, 2002-2003 Acura TL, and 2003 Acura CL. This recall was necessary because "[u]pon deployment of the passenger side frontal air bag, excessive internal pressure may cause the inflator to rupture. … In the event of a crash necessitating deployment of the passenger side frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the vehicle occupants."[80]

(c) Recall No. 14V-353 involved 698,288 Honda vehicles, and involved the following models: 2003-2005 Honda Accord, 2003-2005 Honda Civic, 2003-2005 Honda CR-V, 2003-2005 Honda Pilot, 2003-2004 Honda Odyssey, 2003-2004 Honda Element, 2006 Honda Ridgeline, 2003-2005 Acura MDX, and 2005 Acura RL. This recall was also necessary because "[u]pon deployment of the passenger side frontal air bag, excessive internal pressure may cause the inflator to rupture. … In the event of a crash necessitating deployment of the passenger side frontal air bag, the inflator could rupture

---

[77] *See* NHTSA Campaign Number 14V344000, http://www-odi.nhtsa.dot.gov/owners/SearchResults? refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V344 (last visited Nov. 13, 2014).
[78] *See* NHTSA Campaign Number 14V340000, http://www-odi.nhtsa.dot.gov/owners/SearchResults? refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V340 (last visited Nov. 13, 2014).
[79] *See* NHTSA Campaign Number 14V349000, http://www-odi.nhtsa.dot.gov/owners/SearchResults? refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V349 (last visited Nov. 14, 2014).
[80] *See* NHTSA Campaign Number 14V351000, http://www-odi.nhtsa.dot.gov/owners/SearchResults? refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V351 (last visited Nov. 14, 2014).

with metal fragments striking and potentially seriously injuring the vehicle occupants."[81]

155.    Also on June 20, 2014, Chrysler, Toyota and BMW issued recalls for over 382,000 vehicles containing defective Takata airbags. Each of these recalls was necessary because "[u]pon deployment of the passenger side frontal air bag, excessive internal pressure may cause the inflator to rupture. … In the event of a crash necessitating deployment of the passenger side frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the vehicle occupants." Specifically:

> (a) Recall No. 14V-354 involved 371,309 Chrysler vehicles, and involved the following models: 2003-2008 Dodge Ram 1500, 2005-2008 Dodge Ram 2500, 2006-2008 Dodge Ram 3500, 2008 Dodge Ram 4500, 2008 Dodge Ram 5500, 2004-2008 Dodge Durango, 2005-2008 Dodge Dakota, 2007-2008 Chrysler Aspen, and 2005-2008 Chrysler 300.[82]

> (b) Recall No. 14V-350 involved an undisclosed number of Toyota vehicles, and involved the following models: 2003-2005 Toyota Corolla, 2003-2005 Toyota Corolla Matrix, 2003-2005 Toyota Sequoia, 2003-2005 Toyota Tundra, and 2003-2005 Lexus SC430 (as well as for GM's 2003-2005 Pontiac Vibe, which was made on the same manufacturing line as one of Toyota's models).[83]

> (c) Recall No. 14V-348 involved approximately 11,600 BMW vehicles, and involved the following models: 2004-2006 BMW 3 Series and 2004-2006 BMW M3.[84]

156.    On June 23, 2014, Mazda issued a third recall (its second in five days) for vehicles containing defective Takata airbags. Recall No. 14V-362 involved 18,050 Mazda vehicles, and involved the 2003-2004 Mazda6 and 2004 Mazda RX-8 models. The recall was necessary "to address a safety defect in the passenger side frontal air bag which may produce excessive internal pressure causing the inflator to rupture upon deployment of the air bag. … In the event of a crash necessitating deployment of the passenger's frontal air bag, the inflator could rupture with metal

---

[81] *See* NHTSA Campaign Number 14V353000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V353 (last visited Nov. 14, 2014).
[82] *See* NHTSA Campaign Number 14V354000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V354 (last visited Nov. 14, 2014).
[83] *See* NHTSA Campaign Number 14V350000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V350 (last visited Nov. 14, 2014).
[84] *See* NHTSA Campaign Number 14V348000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V348 (last visited Nov. 14, 2014).

fragments striking and potentially seriously injuring the passenger seat occupant or other occupants."[85]

157.    On June 24, 2014 – just five days after its previous recall of vehicles – Nissan issued a third recall for vehicles containing defective Takata airbags. Recall No. 14V-361 involved 226,326 Nissan vehicles, and involved the following models: 2002-2003 Nissan Maxima, 2002-2003 Nissan Pathfinder, 2002-2004 Nissan Sentra, 2002-2003 Infiniti I35, 2002-2003 Infiniti QX4, 2003 Infiniti FX35, and 2003 Infiniti FX45. The recall was necessary "to address a safety defect in the passenger side frontal air bag which may produce excessive internal pressure causing the inflator to rupture upon deployment of the air bag. … In the event of a crash necessitating deployment of the passenger's frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants."[86]

158.    On June 25, 2014, GM ordered its dealers to stop selling the 2013 and 2014 models of its Chevrolet Cruze sedan "because of a problem with air bags made by the Japanese supplier Takata, whose products are already the subject of a large recall of other vehicles."[87] GM stated that "about 33,000 Cruzes may have a faulty driver's side air bag inflator – the potential result of the wrong part being used."[88]

159.    The following day, on June 26, 2014, GM issued a recall for vehicles containing defective Takata airbags. Recall No. 14V-372 involved 29,019 of GM's 2013-2014 Chevrolet Cruze models, and stated:

> In the affected vehicles, the driver's front air bag inflator may have been manufactured with an incorrect part. … In the event of a crash necessitating deployment of the driver's air bag, the air bag's inflator may rupture and the air bag may not inflate. The rupture could cause metal fragments to strike and

---

[85] Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014).
[86] *See* NHTSA Campaign Number 14V361000, http://www-odi.nhtsa.dot.gov/owners/SearchResults? refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V361 (last visited Nov. 14, 2014).
[87] Aaron Kessler and Christopher Jensen, "G.M. Halts Sale of Cruze Sedan Over Takata Air Bags," *New York Times* (June 25, 2014).
[88] *Id.*

potentially seriously injure the vehicle occupants. Additionally, if the air bag does not inflate, the driver is at an increased risk of injury.[89]

160.    By the end June 2014, the number of vehicles that had been recalled due to defective Takata-manufactured airbags had increased to over 6 million. However, automakers, including the Honda Defendants, had still not yet recalled all of the vehicles containing Takata-manufactured airbags.

161.    On July 2, 2014, Subaru announced that it would recall "about 8,500 Legacy, Outback and Baja cars from the 2003-4 model years because they are equipped with defective Takata air bag inflators."[90] Recall 14V-399 was issued for 8,557 Subaru vehicles (for the Legacy, Outback and Baja models detailed above, as well as for the 2004 Subaru Impreza model) because "[u]pon deployment of the passenger side frontal air bag, excessive internal pressure may cause the inflator to rupture. … In the event of a crash necessitating deployment of the passenger side frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the vehicle occupants."[91]

162.    On July 8, 2014, Honda expanded a "two million vehicle air bag recall by as many as one million more vehicles in California."100 *The New York Times* reported that "[a] defective inflator could explode in a crash, sending shards of its metal casing into the passenger compartment. The inflator was made by Takata Corporation, which has said the propellant inside the inflator was not properly prepared and was too powerful."101 The vehicles affected by this recall included the following models: 2001-2007 Honda Accord, 2001-2005 Honda Civic, 2002-2006 Honda CR-V, 2003-2011 Honda Element, 2002-2004 Honda Odyssey, 2003-2007 Honda Pilot, 2006 Honda Ridgeline, 2003-2006 Acura MDX, 2002-2003 Acura TL, and 2002-2003 Acura CL.[92]

163.    On July 11, 2014, Mitsubishi issued a limited recall for vehicles containing defective

---

[89] *See* NHTSA Campaign Number 14V372000, http://www-odi.nhtsa.dot.gov/owners/SearchResults? refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V372 (last visited Nov. 14, 2014).
[90] Christopher Jensen, "Subaru to Recall Vehicles With Takata Air Bag Inflators," *New York Times* (July 2, 2014).
[91] 91 *See* NHTSA Campaign Number 14V399000 (July 7, 2014), http://www-odi.nhtsa.dot.gov/owners/SearchResults? refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V399 (last visited Nov. 14, 2014).
[92] Christopher Jensen, "Honda Expands Takata Air Bag Inflator Recall," *New York Times* (July 8, 2014).

Takata airbags. Recall No. 14V-421 involved 11,985 of Mitsubishi 2004-2005 Lancer models. The recall was necessary because "[u]pon deployment of the passenger side frontal air bag, excessive internal pressure may cause the inflator to rupture. … In the event of a crash necessitating deployment of the passenger side frontal air bag, the inflator could rupture with metal fragments striking and potentially seriously injuring the vehicle occupants."[93]

164.    On July 16, 2014, BMW issued a third recall for vehicles containing defective Takata airbags. This recall added an additional "1.6 million [BMW] 3 Series cars from the 2000-2006 model years, including about 574,000 in the United States, over a concern that the front-seat passenger could be injured by metal shards from a deploying air bag in a crash."[94] Recall No. 14V-428 involved the 2000-2006 BMW 3 Series and 2001-2006 BMW M3 models. The recall was necessary "to address a safety defect in the passenger side frontal air bag which may produce excessive internal pressure that could cause the air bag inflator to rupture upon deployment of the air bag. … In the event of a crash necessitating deployment of the passenger's frontal air bag, excessive internal pressure could cause rupturing of the inflator resulting in metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants."[95]

165.    On August 1, 2014, Subaru issued a limited second recall for vehicles containing defective Takata airbags. Recall No. 14V-471 involved 8,959 Subaru vehicles, and involved the following models: 2003-2005 Subaru Legacy, 2003-2005 Subaru Outback, 2003-2005 Subaru Baja, and 2004-2005 Subaru Impreza. The recall was necessary because "[u]pon deployment of the passenger side frontal air bag, excessive internal pressure may cause the inflator to rupture. … In the event of a crash necessitating deployment of the passenger side frontal air bag, the inflator could

---

[93] *See* NHTSA Campaign Number 14V421000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V421 (last visited Nov. 14, 2014).
[94] Christopher Jensen, "BMW Recalls 1.6 Million Cars Over Defective Takata Air Bag Part," *New York Times* (July 16, 2014).
[95] *See* NHTSA Campaign Number 14V428000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V428 (last visited Nov. 14, 2014).

rupture with metal fragments striking and potentially seriously injuring the vehicle occupants."[96]

166.    On August 18, 2014, *The New York Times* reported that NHTSA had "deepened" its investigation of Honda's airbags. The article further reported that "[f]ederal regulators have intensified an investigation into the inadvertent deployment of side air bags on 2008 Honda Accords," as they were "concerned that the side air bags along the outer edges of the ceiling and the seats may deploy when a door is slammed."[97]

167.    In August 2014, Honda issued yet another recall of Honda and Acura vehicles, "its **ninth** for the defect – bringing to six million the total of recalled Honda and Acura vehicles" (emphasis added).[98]

168.    On October 2, 2014, a Florida resident "died four days after she crashed her 2001 Honda Accord and was pierced in the neck by debris from the air bag, police said. Authorities originally believed her wounds were caused by an assault."[99] As *The New York Times* reported:

> Hien Tran lay dying in intensive care this month after a car accident, as detectives searched for clues about the apparent stab wounds in her neck.
>
> An unlikely breakthrough arrived in the mail a week after she died from her injuries. It was a letter from Honda urging her to get her red Accord fixed, because of faulty airbags that could explode.
>
> "The airbag," said Tina Tran, the victim's twin sister. "They said it was the airbag."
>
> Ms. Tran became at least the third death associated with the mushrooming recalls of vehicles containing defective airbags made by Takata, a Japanese auto supplier. More than 14 million vehicles from 11 automakers that contain the airbags have been recalled worldwide.

---

[96] *See* NHTSA Campaign Number 14V471000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V471 (last visited Nov. 14, 2014).

[97] Christopher Jensen, "N.H.T.S.A. Deepens Investigation of Honda Accord Air Bags," *New York Times* (Aug. 18, 2014).

[98] Hiroko Tabuchi, "Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls," *New York Times* (Sept. 11, 2014).

[99] Jeff Bennett, Christopher Matthews and Christina Rogers, "Air Bag Recalls Trigger New Scrutiny," *The Wall Street Journal* (Oct. 22, 2014).

> When Ms. Tran crashed her car, the airbag, instead of protecting her, appeared to have exploded and sent shrapnel flying into her neck, the Orange County sheriff's office said.[100]

169.    On October 20, 2014, Mitsubishi issued a "safety notice" for a limited number of 2004-2005 Mitsubishi Lancer owners located in certain geographic areas of the country. The safety notice stated that "[c]ontinued exposure to high levels of humidity may cause the passenger air bag inflator housing to rupture if the vehicle is involved in a crash where the front passenger air bag is designed to deploy. If this occurs, it may increase the risk of injury to the front seat occupants."[101] The safety notice also instructed vehicle owners that to "reduce the risk of injury, do not allow occupants to sit in the front passenger seat until [the airbag] replacement is performed."[102]

170.    Also on October 20, 2014, Toyota announced that it planned to conduct a "supplemental safety recall of approximately 247,000 Corollas, Matrixs, Sequoias, Tundras, and Lexus SC vehicles produced from 2001 to 2004 and equipped with front passenger airbag inflators supplied by Takata Corporation."[103] *The Wall Street Journal* reported that those vehicles were recalled because they "have an air bag that can rupture and send shrapnel into the passenger compartment, an expansion of an earlier recall that affected other models using the safety device built by supplier Takata Corp."[104] Recall No. 14V-655, Toyota's fourth recall for vehicles containing defective Takata airbags, involved the following models: 2003-2005 Toyota Corolla, 2003-2005 Toyota Corolla Matrix, 2003-2005 Toyota Tundra, 2002-2005 Toyota Sequoia, and 2002-2005 Lexus SC (as well as for GM's 2003-2005 Pontiac Vibe, which was made on the same manufacturing line as one of Toyota's models). The recall notice stated that "[i]n the event of a crash necessitating deployment of the front passenger's frontal air bag, the inflator could rupture with

---

[100] Hiroko Tabuchi and Christopher Jensen, "It Looked Like a Stabbing, but Takata Airbag Was the Killer," *New York Times* (Oct. 20, 2014).
[101] http://www.mitsubishicars.com/recall (last visited Nov. 14, 2014).
[102] *Id.*
[103] http://toyotanews.pressroom.toyota.com/releases/toyota+takata+airbag+repair+efforts+oct20.htm (last visited Nov. 14, 2014).
[104] Mike Ramsey, "Toyota Recalls 247,000 Vehicles Because Air Bags May Rupture," *The Wall Street Journal* (Oct. 20, 2014).

metal fragments striking and potentially seriously injuring the passenger seat occupant or other occupants."[105]

171.    On October 22, 2014, NHTSA expanded the list of vehicles affected by the recall of defective Takata components to cover ten automakers and numerous car models, totaling nearly 8 million vehicles.    Those automakers are BMW (627,615 potentially affected vehicles), Chrysler (371,309 potentially affected vehicles), Ford (58,669 potentially affected vehicles), General Motors (undetermined number of potentially affected vehicles), Honda (5,051,364 potentially affected vehicles), Mazda (64,872 potentially affected vehicles), Mitsubishi (11,985 potentially affected vehicles), Nissan (694,626 potentially affected vehicles), Subaru (17,516 potentially affected vehicles) and Toyota (877,000 potentially affected vehicles).[106]

172.    On October 23, 2014, Nissan "expanded its recall of cars equipped with potentially defective air bags from Takata" for an additional 260,000 vehicles worldwide.[107]

173.    The following day, on October 24, 2014, Nissan issued yet another limited recall – its fourth – for vehicles containing defective Takata airbags. Recall No. 14V-668 involved 1,848 Nissan Vehicles, and included the 2013 Infiniti QX56 and 2014 Infinity QX80 models. The recall was necessary because "the driver's frontal air bag inflator may have been manufactured with an incorrect part. … In the event of a crash necessitating deployment of the driver's air bag, the incorrect part may block the flow of propellant to the air bag and the air bag's inflator may rupture. The rupture could cause metal fragments to strike and potentially seriously injure the vehicle occupants."[108]

174.    Over the past 13 years that Takata has known there was a problem with the safety of their airbags, there have been at least four deaths and 139 injuries linked to defective Takata airbags.

---

[105] *See* NHTSA Campaign Number 14V655, http://www-odi.nhtsa.dot.gov/owners/SearchResults?refurl=email&searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V655 (last visited Nov. 14, 2014).
[106] Ben Klayman, "U.S. regulators expand number of vehicles affected by Takata recalls," *Reuters* (Oct. 22, 2014), *available at* http://www.reuters.com/article/2014/10/22/us-autos-takata-warning-idUSKCN0IB03B20141022.
[107] Eric Pfanner, "Nissan Adds 260,000 Cars to Recall," *The Wall Street Journal* (Oct. 23, 2014).
[108] *See* NHTSA Campaign Number 14V668000, http://www-odi.nhtsa.dot.gov/owners/SearchResults?searchType=ID&targetCategory=R&searchCriteria.nhtsa_ids=14V668000 (last visited Nov. 14, 2014).

**Takata Fails to Meet Safety Standards and Maintain Airbag Quality**

175.    As recently as 2011, supervisors at Takata's Monclova plant were reporting potentially lethal defects in the manufacturing process.  Based on internal Takata documents, Takata was unable to meet its own standards for safety up until at least 2011.[109]

176.    In March 2011, a Takata supervisor at the Monclova plant sent an e-mail to other employees stating "A part that is not welded = one life less, which shows we are not fulfilling the mission."  The title of the e-mail was "Defectos y defectos y defectos!!!!."[110]

177.    Despite all the theories proposed by Takata to federal regulators as to the sources of the defects, according to documents reviewed by *Reuters*, Takata also cited rust, bad welds, and even chewing gum dropped into at least one inflator as reasons for the defects. The same documents show that in 2002, Takata's plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

**The Defective Vehicles Containing Takata-Manufactured Airbags Were Sold as "Safe" and "Reliable"**

178.    In advertisements and promotional materials, the Honda Defendants maintained that their vehicles are safe and reliable.

179.    For example, the Honda Defendants maintained:

(a) **Acura**: "Acura believes driving a luxury car should be a highly enjoyable experience. And while we tend to dwell on the more exhilarating aspects of our vehicles, we consider your safety a top priority. … Safety has been top of mind with Acura engineers since day one. … Over the years, we've added many advanced safety technologies to the list, and the vast majority of them are now standard on every model."[111]

(b) **Honda**: "Honda is committed to providing safety for everyone—that means crash protection not only for our own drivers and passengers, but also for the occupants of other vehicles, and injury mitigation for pedestrians." "As

---

[109] Joanna Zuckerman Bernstein, Ben Klayman, and Yuko Kubota, "Exclusive: Takata engineers struggled to maintain airbag quality, documents reveal," *Reuters* (Oct. 17, 2014), *available at* http://www.reuters.com/article/2014/10/18/us-takata-airbags-idUSKCN0I701B20141018.
[110] *Id.*
[111] http://www.acura.com/SafetyOverview.aspx (last visited Nov. 14, 2014).

a leader, Honda looks beyond government regulations, studying real world situations to develop new safety technologies for everyone."[112]

180.    Purchasers of the Defective Vehicles were thus were led to believe their vehicles were safe and reliable vehicles.

181.    However, as detailed above, millions of vehicles that contained defective Takata-manufactured airbags were sold by the Vehicle Manufacturer Defendants and other automakers.

182.    Vehicles with defective airbag systems are not "safe" and "reliable" as the Defective Vehicles were advertised and promoted to be.

183.    As detailed above, additional recalls (or expanded recalls) have been issued after NHTSA's list was published on October 22, 2014[113], and it is likely that additional vehicle recalls will be announced in the future.

184.    In fact, Honda just recently announced, on November 6, 2014, that it would "soon expand its U.S. recalls involving potentially explosive air bags made by Takata Corp., adding a small number of vehicles in certain hot and humid regions and expanding the scope of existing recalls."[114]  In addition, Honda reported that it would "also reclassify some cars that have been part of a regional 'safety improvement campaign,' making them part of a more severe regional 'safety recall.'"[115]

185.    Additionally, NHTSA has also recently urged affected vehicle owners to "check their [Vehicle Identification Number ("VIN")] periodically as manufacturers continue to add VINs to the [recall] database."[116]

186.    Moreover, Takata recently disclosed that it has failed to keep adequate quality-

---

[112] http://corporate.honda.com/safety/ (last visited Nov. 14, 2014).
[113]    http://www.nhtsa.gov/About+NHTSA/Press+Releases/2014/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Nov. 14, 2014).
[114] Yoko Kubota, "Honda to Expand Takata Air-Bag Recalls in Some Areas," *The Wall Street Journal* (Nov. 6, 2014).
[115] *Id.*
[116]    *See*    http://www.nhtsa.gov/About+NHTSA/Press+Releases/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Nov. 14, 2014).

control records, making it difficult to identify vehicles with potentially defective air bags.[117]

**Federal Investigations**

187. NHTSA is now investigating Takata airbags manufactured between 2000 and 2007 to determine whether Takata airbag inflators made during that time were improperly sealed.[118]

188. In a Consumer Advisory dated October 22, 2014, NHTSA said:

> The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.

189. On October 29, 2014, NHTSA's Deputy Administrator sent a letter to Takata in follow-up to NHTSA's "ongoing investigation into defective Takata air bags, and to express a number of serious concerns that must be resolved to ensure public safety." NHTSA's letter further stated:

> Takata has supplied tens of millions of air bag inflators to various vehicle manufacturers over the last fifteen years that, when functioning as designed, save lives and reduce or prevent serious injuries in crashes. However, as you are well aware based on months of discussions your technical experts have had with my staff, millions of Takata inflators are being recalled because, when activated, a growing number are creating an unacceptable risk of deaths and injuries by projecting metal fragments into vehicle occupants rather than properly inflating the attached air bag. Further action by Takata is required to better understand the failures and further mitigate the safety risk.
>
> Actual and potential inflator failures have led to a large number of recalls in the last eighteen months. General Motors, Ford, Chrysler, Toyota, Nissan, Honda, Subaru, Mitsubishi, BMW, and Mazda have all initiated recall campaigns to address the serious safety risks posed by inflator failures. These recalls encompass a population of millions of vehicles. I am deeply troubled by this situation because of the potential risk for death and injury as well as the erosion of public confidence in a proven life-saving technology.

---

[117] *See* Hiroko Tabuchi and Christopher Jensen, "Now the Air Bags Are Faulty, Too," *New York Times* (June 23, 2014); Colum Murphy and Eric Pfanner, "Takata Faces Rocky Road After Recalls," *The Wall Street Journal* (Oct. 1, 2014).
[118] Klayman, *supra* n.20

190.    Also on October 29, 2014, NHTSA sent a letter to ten automakers. The letter stated that "[t]he ongoing cooperation of all manufacturers who have recalled vehicles is essential to address this safety risk," and that the "NHTSA team is engaged with you in critical work to better understand the failures and take action to remedy the safety risk." NHTSA's letter also asked the automakers to provide NHTSA with information as to their recall process, urged a faster response from them, and stated that "more can and should be done as soon as possible to prevent any further tragedies."

191.    On October 30, 2014, *The New York Times* reported that NHTSA "ordered the airbag supplier Takata to turn over documents and answer questions under oath related to defective airbag inflaters." The order "demanded that Takata turn over records related to the production, testing and subsequent concerns raised internally and by automakers over the airbags, as well as communications between the company and automakers about defect concerns."[119]

192.    Also on October 30, 2014, NHTSA's Office of Defects Investigation ("ODI") published an ODI Resume for Investigation No. AQ 14-004. That document stated that NHTSA had opened an investigation "in order to investigate the extent and scope of Honda's reporting failures, as well as the reason(s) for such failures and the steps being taken by Honda to assure full compliance with TREAD reporting requirements." The document further stated:

> **NHTSA has received information indicating that American Honda Motor Co. (Honda) failed to report incidents involving Takata airbags, which resulted in a death or injury, and for which claims were asserted against Honda.**
>
> The TREAD Act requires, among other things, that all manufacturers of 5,000 or more light vehicles submit to NHTSA, on a quarterly basis, Early Warning Reports (EWRs) that include information on each and every incident involving death or injury, identified in a claim against the manufacturer or a notice received by the manufacturer alleging or proving that the death or injury was caused by a possible defect. Manufacturers must submit EWRs to NHTSA no later than 60 days after the last day of each calendar quarter.

---

[119] Aaron Kessler, "Takata, Supplier of Defective Airbags, Ordered to Submit Records," *New York Times* (Oct. 30, 2014).

**NHTSA is also concerned that Honda's reporting failures go beyond the Takata incidents described above, and NHTSA has received information from Honda indicating that Honda may have failed to meet its TREAD reporting obligations, including reporting other death or injury incidents.** (Emphasis added)

193.    On November 3, 2014, NHTSA issued a Special Order – separate from NHTSA's October 30, 2014 investigation – demanding documents from Honda regarding airbags. As reported by the *Detroit Free Press*: "The nation's top auto safety regulator has demanded Honda to show by Nov. 24 what and when it knew about deaths and injuries caused by exploding air bags made by Takata, a supplier at the center of an expanding recall."[120] A second article reported on the Special Order as follows:

> The National Highway Traffic Safety Administration said today it wants Honda to produce even more documents and data than it asked for earlier this week related to the recall of millions of air bags.
>
> NHTSA issued a 15-page special order Wednesday asking the Japanese automaker to produce all documents and communications it has had with air bag supplier Takata about its air bag inflators and recalls of vehicles equipped with the faulty inflators. …
>
> "We are compelling Honda to produce documents and answer questions under oath relevant to our ongoing investigation into defective air bags made by Takata," David Friedman, NHTSA's deputy administrator, said in a statement today. "We expect Honda's full cooperation as we work to keep the American public safe."
>
> Today's action is on top of an investigation launched earlier this week by NHTSA asking Honda to show by Nov. 24 what and when it knew about deaths and injuries caused by exploding air bags made by Takata. That investigation is focused on whether Honda reported information about accidents related to the recalls in a timely manner.[121]

194.    The U.S. Department of Justice has reported that it is investigating whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers, including Toyota and Honda.

195.    In addition to a federal grand jury subpoena issued November 13, 2014, by the United States District Court for the Southern District of New York, Takata also faces a hearing before the

---

[120] Greg Gardner, "NHTSA Demands Honda Documents on Air Bags," *Detroit Free Press* (Nov. 5, 2014).

[121] Brent Snavely, "NHTSA Issues 2nd Order for Honda Recall Documents," *Detroit Free Press* (Nov. 5, 2014).

United States Senate Committee on Commerce on November 20, 2014, to include company officials

from Takata as well as government officials from NHTSA.

**Defective Vehicle Owners Are Warned About Their Airbags; Remediation Is Lacking**

196.    On October 20, 2014, NHTSA "warned the owners of about 4.7 million vehicles with

defective air bags made by the Takata Corporation that they should 'act immediately' to have them

fixed."[122]

197.    Two days later, on October 22, 2014, NHTSA published a Consumer Advisory

entitled "Vehicle Owners with Defective Airbags Urged to Take Immediate Action." The Consumer

Advisory stated:

> The National Highway Traffic Safety Administration urges owners of certain
> Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford
> and General Motors vehicles to act immediately on recall notices to replace
> defective Takata airbags. Over seven million vehicles are involved in these
> recalls, which have occurred as far back as 18 months ago and as recently as
> Monday. The message comes with urgency, especially for owners of vehicles
> affected by regional recalls in the following areas: Florida, Puerto Rico,
> limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi,
> Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin
> Islands and Hawaii.
>
> "Responding to these recalls, whether old or new, is essential to personal
> safety and it will help aid our ongoing investigation into Takata airbags and
> what appears to be a problem related to extended exposure to consistently
> high humidity and temperatures. However, we're leaving no stone unturned in
> our aggressive pursuit to track down the full geographic scope of this issue,"
> said NHTSA Deputy Administrator David Friedman.[123]

198.    The Consumer Advisory also urged consumers to "contact their manufacturer's

website to search, by their vehicle identification number (VIN) to confirm whether their individual

vehicle has an open recall that needs to be addressed" and to "check their VIN periodically as

manufacturers continue to add VINs to the [recall] database."[124]

199.    In a statement from Honda regarding Airbag Inflator Regional Safety Improvement

---

[122] Christopher Jensen, "Defect in Takata Air Bags Prompt Urgent Warning to Drivers," *New York Times* (Oct. 20, 2014).
[123] http://www.nhtsa.gov/About+NHTSA/Press+Releases/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Nov. 14, 2014).
[124] *Id.*

Campaigns, dated October 22, 2014, Honda announced:

> If a customer has received notification from Honda about this special campaign, Honda requests that the customer promptly contact his/her local authorized dealer and make an appointment for replacement of the covered airbag components.

200. However, Honda has acknowledged that it would not send out recall letters to car owners or lessees until there are parts available, meaning that many drivers would not receive notices for weeks or longer as they continue to drive vehicles with potentially deadly airbags.

201. Like Honda, other automakers have also instructed customers to make an appointment to replace their Takata airbags at an authorized dealer.

202. But, authorized dealers are experiencing a severe shortage of parts to replace the faulty airbags. Dealers have been telling frustrated car owners to expect to wait many months before their airbags can be replaced. Honda owners who have received recall notices have been told to wait at least a month before their authorized dealer has availability to assess their vehicle. Toyota dealers are reporting that wait times for customers who own affected vehicles to get their Takata airbags replaced could be as long as one to three months.[125]

203. *Reuters* reported that the "faulty Takata air bags may not be replaced for months."[126] The article further reported that "U.S. safety regulators do not expect Japanese auto parts maker Takata Corp to be able to fully supply replacement parts for millions of defective air bags until after February, and urged Takata and the automakers it supplies to seek additional parts from other companies."

204. Similarly, *The New York Times* reported that "a shortage of replacement parts has meant that many drivers who scrambled to take heed of that advice face wait times of months or longer. At least one manufacturer, Toyota, even said it could disable passenger-side airbags in

---

[125] Jeff Harrington, "Tampa Bay auto dealers warn of delays to replace defective airbags," *Tampa Bay Times* (Oct. 21, 2014), *available at* http://www.tampabay.com/news/business/autos/tampa-bay-auto-dealers-warn-of- delays-to-replace-defective-airbags/2203132.

[126] Patrick Rucker, Christian Plumb and Pail Lienert, "Faulty Takata Air Bags May Not Be Replaced For Months," *Reuters* (Oct. 29, 2014).

affected cars for which parts were not available, and instruct owners not to use that seat."[127]

205.    In response to the airbag replacement shortage, Toyota has taken the extreme step of disabling passenger airbags entirely and putting a "Do Not Sit Here" decal in the vehicle until a proper repair can be made.  Toyota stated: "If a replacement part is temporarily unavailable at the time of repair, we view disabling the front passenger airbag as a temporary measure that prioritizes customer safety.  We also advise that customers not occupy the front passenger seat until the replacement inflator is installed and the airbag is fully functional."[128]

206.    In the alternative, Toyota is advising customers to not drive their vehicles with Takata airbags until the airbags can be replaced.

207.    Like Toyota, other automakers have also resolved to remedy their customers' vehicles containing Takata airbags not by providing temporary replacement vehicles or replacement parts, but by disengaging the airbags entirely.

208.    In fact, customers are put in potentially dire situations because replacement airbag parts are not available in the quantities demanded by those affected by the millions of recalls.  At this time, automakers are not offering customers loaner cars to use until their airbags can be replaced.

209.    The *Associated Press* reported that "[p]arts shortages have delayed replacement of recalled air bags," but that "Takata has agreed to add two production lines by early next year."[129]

210.    Obviously, the addition of two additional productions lines will help Takata to manufacture more replacement airbag systems for the affected vehicles, including the Defective Models, but that will still not be sufficient to replace all of the defective airbags until well into 2015 (at the earliest).  As *Automotive News* reported:

> In August, Takata produced 132,459 replacement inflators, according to data that was compiled by NHTSA and first reported by *The Detroit News*.  By

---

[127] Hiroko Tabuchi and Aaron Kessler, "Takata Airbag Recall Faces Rising Scrutiny," *New York Times* (Oct. 22, 2014).
[128] *Id.*
[129] Tom Krisher, "Nissan Recalls Infiniti SUVs to Fix Air Bags," *Associated Press* (Oct. 31, 2014).

> February, Takata's cumulative output is expected to reach 1.47 million devices.
>
> But that's still well short of the number of inflators Honda needs to repair 2.8 million vehicles it has recalled in 11 states and territories. And it doesn't include the inflators that other automakers need for their own recalls.[130]

211.    Congress is also concerned with this serious problem. U.S. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), "urge[d] [the DOT] to provide clear guidance regarding [NHTSA's] October 21st Consumer Advisory about potentially defective Takata airbags."[131]

212.    The Senators expressed their belief "that NHTSA should immediately issue a nation-wide safety recall on all the affected cars, regardless of where the car is registered. NHTSA's October 21, 2014 Consumer Advisory provided "no factual basis for distinguishing between states or regions of the country regarding the potential severe danger of this defect to motorists. All    state experience seasons of heat and humidity . . . Replacement parts are,'essential to personal safety,' **for all drivers** whether they live in New England or Florida, and NHTSA should immediately issue a nation-wide recall that protects all drivers."[132]

213.    The Senators were also "alarmed and astonished that NHTSA has endorsed a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the fronts seat if replacement parts for these airbags are unavailable.  As a matter of policy, this step is extraordinarily troubling and potentially dangerous. As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (40 U.S.C.) prohibits a manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption.  We are unaware of an exemption from your office in the case of Takata airbags."[133]

214.    Equally important, the Senators said, is that "all drivers deserve access to loaners or

---

[130] Neal Boudette, "Takata Airbag Recall Puts Pressure on Honda," *Automotive News* (Nov. 3, 2014).
[131] Oct. 23, 2014   Letter from U.S. Senators Richard Blumenthal and Edward J. Markey to the U.S. Dept. of Transportation, at 1.
[132] *Id.* at 2.
[133] *Id.*

rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."[134] **"[Y]our office should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts**."[135]

215.    Plaintiffs and Class Members are now left in the position of either being without a vehicle or driving a vehicle that does not have an operable airbag for months at a time.  They are left without a vehicle to take them to work, to pick up their children at school or childcare, or, more urgently, a vehicle for emergency situations.  Plaintiffs and Class Members must also take time away from work and other important obligations to take their vehicles to the repair shop when replacement parts do become available.

**The Faulty Airbags and Related Quality Concerns Have Caused and Will Continue to Cause Values of the Defective Vehicles to Plummet**

216.    A vehicle purchased or leased under the reasonable assumption that it is "safe" and "reliable" as advertised is worth more than a vehicle known to be subject to the risk of a possibly life-threatening failure of an airbag system. A vehicle purchased under the assumption that it was produced in conformity to high safety standards is worth more than a vehicle produced in a system that promotes expedience over quality and safety and hides known defects. Moreover, vehicles owners (and lessees) have a reasonable expectation that automakers will abide by federal state and common law obligations to affirmatively disclose known defects in a timely manner.

217.    This did not happen and, as a result, all purchasers of the Defective Vehicles overpaid for their vehicles at the time of purchase. As news of the dangerous and defective airbag systems, and Defendants' quality control issues surfaced in 2014, the value of the Defective Vehicles has diminished and will continue to do so.

218.    As detailed above, national and regional media outlets around the country have

---

[134] *Id.*
[135] *Id.* (emphasis added)

reported extensively about the defective airbags in recent months, raising public awareness of their defect and its safety implications. Among the news negatively affecting the value of the Defective Vehicles are the reports detailed in the preceding section that have been widely read.

219.    These reports, along with others detailing the utter lack of regard for customers' safety exhibited by Takata and the Vehicle Manufacturer Defendants, have materially negatively impacted the value of the Defective Vehicles, including Plaintiffs' vehicles.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

220.    Upon information and belief, Defendant Takata has known of the defects in its airbags since at least 2001.  Defendant Honda has known of the defects in the Takata airbags in Honda's vehicles since 2004.  The Vehicle Manufacturer Defendants have known or should have known of the defects in Takata's airbags since 2008.  Defendants knew well before Plaintiffs and Class Members purchased the Defective Vehicles, and have concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the defects.

221.    Although Defendants have now acknowledged to safety regulators that Takata's airbags are defective, for years, Defendants did not fully investigate or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

222.    Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

## CLASS ACTION ALLEGATIONS

223.    The Classes' claims all derive directly from a single course of conduct by Takata and the Vehicle Manufacturer Defendants.  This case is about the responsibility of Takata and the Vehicle Manufacturer Defendants, at law and in equity, for their knowledge, their conduct, and their products. Takata and the Vehicle Manufacturer Defendants have engaged in uniform and standardized conduct toward the Classes.  They did not differentiate, in degree of care or candor,

their actions or inactions, or in the content of their statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the respective Classes, the same legal standards govern. Additionally, many states share the same legal standards and elements of proof, facilitating the certification of multistate classes for some or all claims. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the putative Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

**The Nationwide Consumer Class**

224.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a Nationwide Consumer Class defined as follows:

> **All persons who entered into a lease or purchased one or more Defective Vehicles in the United States.**

**The State Consumer Classes**

225.    Plaintiffs allege statewide class action claims on behalf of Plaintiffs in the State of South Carolina ("State Class") as initially defined as follows:

> **All persons in the State of South Carolina who entered into a lease or purchased one or more of the Defective Vehicles.**

226.    The Nationwide Consumer Class and the State Consumer Classes and their members are sometimes referred to herein as the "Class" or "Classes."

227.    To the extent warranted, the list of Defective Vehicles for the purpose of the Nationwide Consumer Class and the State Consumer Class, Definitions will be supplemented to include other vehicles that have Takata airbags that may be defective.

228.    Excluded from each Class are Takata and the Vehicle Manufacturer Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Takata and the Vehicle Manufacturer Defendants; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

**Numerosity and Ascertainability**

229.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Plaintiffs are informed and believe that there are millions of Defective Vehicles nationwide, and thousands of Defective Vehicles in each of the States. Individual joinder of all Class members is impracticable.

230.    Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by Takata and the Vehicle Manufacturer Defendants or third parties in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**Predominance of Common Issues**

231.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that are the same for each of the respective Classes predominate over questions affecting only individual Class members. These include, without limitation, the following:

(a)    Whether the Defective Vehicles suffer from airbag defects;

(b)    Whether the Defective Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the airbags at issue;

(c)    Whether Defendants knew or should have known about the airbag defects, and, if yes, how long Defendants have known of the defects;

(d)    Whether the defective nature of the Defective Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Defective Vehicle;

(e)    Whether Defendants had a duty to disclose the defective nature of the Defective Vehicles to Plaintiffs and Class Members;

(f)    Whether Defendants omitted and failed to disclose material facts about the Defective Vehicles;

(g)    Whether Defendants' concealment of the true defective nature of the Defective Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing the Defective Vehicles;

(h)    Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppels;

(i)    Whether Defendants misrepresented that the Defective Vehicles were safe;

(j)    Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective airbag inflators;

(k)    Whether Defendants' conduct, as alleged herein, likely to mislead a reasonable consumer;

(l)    Whether Defendants' statements, concealments and omissions regarding the Defective Vehicles material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

(m)    Whether Defendants violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

(n)      Whether the Defective Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

(o)      Whether Plaintiffs and the Classes are entitled to a declaratory judgment stating that the airbag inflators in the Defective Vehicles are defective and/or not merchantable;

(p)      Whether Defendants' unlawful, unfair, and/or deceptive practices harm Plaintiffs and the Classes;

(q)      Whether Defendants have been unjustly enriched by their conduct;

(r)      Whether Plaintiffs and the Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

(s)      Whether Defendants should be declared responsible for notifying all Class members of the defects and ensuring that all vehicles with the airbag inflator defect are promptly recalled and repaired;

(t)      What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy; and

(u)      How such penalties should be most equitably distributed among Class members.

**Typicality**

232.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class members, and arise from the same course of conduct by Takata and the Vehicle Manufacturer Defendants. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**Adequate Representation**

233.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class

actions, including actions involving defective products.

234.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiffs, nor their counsel, have interests adverse to those of the Classes.

**Superiority**

235.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by the individual Class members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of conduct for Takata and the Vehicle Manufacturer Defendants; and because adjudication with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members, or impair substantially or impede their ability to protect their interests.

236.    Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

237.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants Takata and the Vehicle Manufacturer Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

238.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.   The common questions of law and of fact regarding Takata and the Vehicle

Manufacturer Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

239.    Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

240.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

241.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

242.    The Classes expressly disclaim any recovery in this action for physical injury resulting from the airbag inflator defects without waiving or dismissing such claims.  Plaintiffs are informed and believe that injuries suffered in crashes as a result of the defective airbags implicate the Defective Vehicles and are continuing to occur because of Defendants' delays and inaction regarding the commencement and completion of recalls. The increased risk of injury from the airbag defects serves as an independent justification for the relief sought by Plaintiffs and the Classes.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301, *et seq*.**

(On Behalf of Plaintiffs and the Nationwide Class and South Carolina Class)

243.    Plaintiffs bring this Count on behalf of members of the Nationwide Class who are residents of the following States:  South Carolina and Florida. In the event a nationwide class cannot be maintained on this Claim, this Claim is asserted by each statewide class asserting claims related to a breach of warranty.

244.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

245.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

246.    The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

247.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

248.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

249.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

250.    Defendants provided Plaintiffs and the other Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled. Mich. Comp. Laws § 440.2314(2)(a), (c), and (e); U.C.C. § 2-314.

251.    Defendants breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Defective Vehicles share common design defects in that they are equipped with defective airbags that can explode, leaving occupants of the Defective Vehicles vulnerable to serious injury and death. Defendants have admitted that the Defective Vehicles are defective in issuing its recalls, but the recalls are woefully insufficient to address each of the defects.

252.    In their capacity as warrantors, as Defendants had knowledge of the inherent defects in the Defective Vehicles, any efforts to limit the implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void.

253.    The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants and Plaintiffs and the other Class Members, as, at the time of purchase and lease, Plaintiffs and the other Class Members had no other options for purchasing warranty coverage other than directly from Defendants.

254.    The limitations on the warranties are substantively unconscionable. Defendants knew that the Defective Vehicles were defective and would continue to pose safety risks after the

warranties purportedly expired. Defendants failed to disclose these defects to Plaintiffs and the other Class Members. Thus, Defendants' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

255.    Plaintiffs and each of the other Class Members have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Defendants and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities and because South Carolina law does not require privity.

256.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

257.    Furthermore, affording Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Defective Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby

deemed satisfied.

258.    Plaintiffs and the other Class Members would suffer economic hardship if they returned their Defective Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class Members have not re-accepted their Defective Vehicles by retaining them.

259.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

260.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Based on Defendants' continuing failures to fix the known dangerous defects, Plaintiffs seek a declaration that Defendants have not adequately implemented their recall commitments and requirements and general commitments to fix its failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted. Plaintiffs also seek the establishment of a Defendant-funded program for Plaintiffs and Class Members to recover out of pocket costs incurred, as discussed above.

261.    Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the airbags in their vehicles. Such expenses and losses will continue as Plaintiffs and Class members must take time off

from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in going through the recall process.

262.    The right of Class Members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendants' conduct presents common questions of law. Equity and fairness requires the establishment by Court decree and administration  under Court supervision of a program funded by the Defendants,  using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## SECOND CLAIM FOR RELIEF

### Fraud by Concealment

(On Behalf of Plaintiffs and the Nationwide Class and South Carolina Class)

263.    This Claim is brought on behalf of the Nationwide Class and South Carolina Class under Michigan law.

264.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

265.    As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.

266.    Defendants had a duty to disclose these safety issues because they consistently marketed their vehicles as reliable and safe and proclaimed that Defendants maintain the highest safety standards. Once Defendants made representations to the public about safety, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

267.    In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who have superior knowledge and access

to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and Class Members. These omitted facts were material because they directly impact the safety of the Defective Vehicles. Whether or not an airbag will improperly explode and cause shrapnel to come flying out at passengers at great speeds is a material safety concern. Defendants possessed exclusive knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles.

268.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and Class Members to purchase Defective Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

269.    Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and Class Members' actions were justified. Defendants were in exclusive control of the material facts concerning the airbag defects and such facts were not known to the public or the Class Members.

270.    As a result of the concealment and/or suppression of facts, Plaintiffs and Class Members have sustained and will continue to sustain damages arising from the difference between the actual value of that which Plaintiffs and the Class Members paid and the actual value of that which they received.

271.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**THIRD CLAIM FOR RELIEF**

**Claim for Actual Damages/Expense Reimbursement Fund**

(On Behalf of Plaintiffs and the Nationwide Class and South Carolina Class)

272.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

273.    This Count is brought on behalf of all Plaintiffs and Members of all Classes. Plaintiffs and Class Members have incurred out-of-pocket expenses and damages in attempting to rectify the airbag defect in their vehicles, and such expenses and losses will continue as they must take time off from work, pay for rental cars or other transportation arrangements, child care and the myriad expenses involved in going through the recall process to correct the defect.

274.    Plaintiffs and Class Members seek payment of such damages and reimbursement of such expenses under the consumer statutes and applicable law invoked in this Complaint. While such damages and expenses are individualized in detail and amount, the right of the Class Members to recover them presents common questions of law. Equity and fairness to all Class members requires the establishment by court decree and administration under Court supervision of a Defendant-funded program, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid, such that Defendants, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the Defect.

## FOURTH CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTIES

(On Behalf of Plaintiffs and the Nationwide Class and South Carolina Class)

275.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

276.    This Claim is brought on behalf of the Nationwide Class and South Carolina Class. Further, this Claim is brought on behalf of the South Carolina Class.

277.    Takata Defendants and the Vehicle Manufacturer Defendants are "merchants" as to the Class Vehicles within the meaning S.C. Code Ann. § 36-2-104. Takata Defendants supplied the

airbags at issue, and the Vehicle Manufacturer Defendants manufactured and sold the Class Vehicles, which are "goods" within the meaning of these statutory provisions. Consequently, pursuant S.C. Code Ann. § 36-2-314, Defendants impliedly warranted that the Class Vehicles were merchantable, including that they were fit for their ordinary purposes as safe passenger vehicles, that they could pass without objection in the trade, and that they were adequately contained, packaged, and labeled.

278.    Defendants breached its implied warranty of merchantability to Plaintiffs and the Nationwide and South Carolina Class because the Class Vehicles were not fit for the ordinary purposes for which they are used—namely as a safe passenger motor vehicle.  S.C. Code Ann. § 36-2-314(2)(c).

279.    Specifically, and according to Defendants' representatives, the Class Vehicles contain airbag defects, which makes the Class Vehicles unfit for their ordinary purpose of providing safe transportation.

280.    Defendants further breached its implied warranty of merchantability to Plaintiffs and the Nationwide and South Carolina Class because the Class Vehicles would not pass without objection in the trade, as they contained the airbag defects. S.C. Code Ann. § 36-2-314 (2)(a).

281.    Defendants further breached its implied warranty of merchantability to Plaintiffs and the Nationwide and South Carolina Class because the Class Vehicles were not adequately contained, packaged, and labeled in that the directions and warnings that accompanied the Class Vehicles did not adequately instruct Plaintiffs on the proper use of the Class Vehicles in light of the airbag defects. S.C. Code Ann. § 36-2-314 (2)(e).

282.    As a proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Nationwide and South Carolina Class were damaged in the amount of, and entitled to recover, the difference in value between the Class Vehicles as warranted (their sales price) and the Class Vehicles as actually delivered (perhaps worth $0.00) (i.e., a total

refund of the full or partial purchase and/or lease price of the Class Vehicles), plus loss of use and other consequential damages arising after the date of delivery of the Class Vehicles.

283.    It was not necessary for Plaintiffs and each Nationwide and South Carolina Class Members to give Defendants notice of Defendants' breach of the implied warranty of merchantability because Defendants had actual notice of the airbag defects. Prior to the filing of this action, Defendants issued a safety recall for the Class Vehicles acknowledging the airbag defects. Defendants had notice of the airbag defects as early as 2004, and possibly as early as 2001.. In addition to the above, the filing of this action is sufficient to provide Defendants notice of its breaches of the implied warranty of merchantability with respect to the Class Vehicles.

## FIFTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT

(On Behalf of Plaintiffs and the Nationwide Class and South Carolina Class)

284.    Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

285.    Plaintiffs bring this claim individually and on behalf of the other Class members against Defendants.  Defendants had knowledge of the airbag defects, which it concealed from/failed to disclose to Plaintiffs and Members of the Class.

286.    As a result of its wrongful acts and omissions as set forth above, Defendants were able to sell or lease the Defective Vehicles for more than they were worth and when Defective Vehicles were sold used, the vehicles were sold at a higher resale price than they were worth, all of which allowed Defendants to wrongfully receive a benefit from Plaintiffs and members of the class. It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment

against the Defendants, as follows:

A.    an order certifying the putative Classes designating Plaintiffs as the named representatives of the Classes, and designating the undersigned as Class Counsel;

B.    any and all equitable relief as this Court deems fit, including but not limited to injunctive relief.

C.    a declaration that the airbags in Defective Vehicles are defective;

D.    a declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Defective Vehicles;

E.    an order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Defective Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Defective Vehicles to eliminate the defective airbags;

F.    an award to Plaintiffs and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, in an amount to be proven at trial;

G.    a declaration that the Defendants must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Defective Vehicles, or make full restitution to Plaintiffs and Class Members;

H.    an award of attorneys' fees and costs, as allowed by law;

I.    an award of pre-judgment and post-judgment interest, as provided by law;

J.    leave to amend this Complaint to conform to the evidence produced at trial; and

K.    such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

Dated:  November 14, 2014                    MOTLEY RICE LLC

By:___/s/ Jodi Westbrook Flowers_____

Joseph F. Rice, Esq. (SC4710; Fed I.D. 3445)
Jodi Westbrook Flowers, Esq. (SC66300)
Kevin R. Dean, Esq. (SC70347; GA214855;
Fed I.D. 8046)
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
E-mail:  jrice@motleyrice.com

KNOWLES LAW FIRM, PC
Brian M. Knowles, Esq. (SC73108; Fed I.D.
9694)
1212 Wappoo Road
Charleston, SC 29407
T:  (843) 810-7596
F:  (877) 408-1078
brian@knowlesinternational.com

LAW OFFICE OF ROBERT M. TURKEWITZ,
LLC
Robert M. Turkewitz, Esq. (SC11589; Fed I.D.
4902)
2186 Wappoo Hall Road
Charleston, SC 29412
T:  (843) 628-7868
F:  (843) 277-1438
rob@rmtlegal.com

ATTORNEYS FOR THE PLAINTIFFS